## WALKER, Appellant, v. GROUT BROTHERS AUTOMOBILE COMPANY, Respondent.

**St. Louis Court of Appeals, April 30, 1907.**

1. **CONTRACTS: Interpretation: Function of Court.** The court cannot make contracts but must interpret them by giving due force and effect to all their terms and ordinarily it is immaterial whether a contract is wise or unwise, reasonable or unreasonable.

2. **SALES: Express Warranty: Articles Sold "Satisfactory" to Purchaser.** Where a lady purchased an automobile on the assurance of the seller that it should be "satisfactory" to her, she had a right to reject and return it if it was not satisfactory to her provided she acted in good faith; it was not sufficient to bind her that it should be satisfactory to a reasonable person for the purpose for which it was sold. [A number of cases discussing the principle are reviewed.]

3. ————: ————: ————: **Pleading.** Where a petition alleged that the plaintiff purchased an automobile and paid for the same on the agreement that it should be perfectly satisfactory to plaintiff and that it proved unsatisfactory and was replaced by another which was unsatisfactory, it is stated a cause of action to recover the money paid, the allegations were sufficient to show that the second machine was delivered in pursuance of the original contract to furnish a satisfactory machine.

4. ————: **Rescission: Tender.** And in such case where the evidence showed that the defendant's agents made repeated efforts to make the machine satisfactory but could not do it and the plaintiff finally sent it back and turned it over to defendant, this was sufficient to show not only tender, but delivery.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

REVERSED AND REMANDED.

*George L. Edwards* and *Edward D'Arcy* for appellant.

(1) Where a contract provides for the sale of an article, which is to be satisfactory to the vendee, it must

be satisfactory to him and not merely such an article as ought to be satisfactory or as would be satisfactory to other persons. McCormick v. Finch, 100 Mo. App. 641, distinguishing Pope v. Best, 14 Mo. App. 502; Thompson v. Dickerson, 68 Mo. App. 535; Blaine v. Knapp & Co., 140 Mo. 241; Berthold v. St. Louis Electric Con. Co., 165 Mo. 280; Meyer v. Christopher, 176 Mo. 580; Mullally v. Greenwood, 127 Mo. 138; Zaleski v. Clark, 44 Conn. 218; Reeves v. Chandler, 113 Ill. App. 167; Brown v. Foster, 113 Mass. 136; Cann v. Rector, 111 Mo. App. 164; Koehler v. Bull, 94 Mich. 496; Frary v. Rubber Co., 52 Minn. 264; Butler v. Mill Co., 28 Minn. 205; Goodrich v. Van Nortwick, 43 Ill. 445; Kendall v. West, 196 Ill. 221; Bush v. Koll, 2 Colo. App. 48; Iron Co. v. Holbeck, 82 S. W. 1128; Osborn v. Francis, 38 W. Va. 312; Church v. Shanklin, 95 Cal. 626; Hawkins v. Graham, 149 Mass. 284; Braunstein v. Insurance Co., 1 B. & S. 783; Barrett v. Coal Co., 51 W. Va. 416; Gibson v. Cranage, 39 Mich. 49; McCarren v. McNulty, 7 Gray 139; Campbell v. Thorp, 36 Fed. 414; Tyler v. Ames, 6 Lans. 280; Williams v. Railroad, 85 Mo. App. 110; Taylor v. Brewer, 1 M. & S. 290; Rossite v. Cooper, 33 Vt. 322; Hart v. Hart, 22 Barb. 606; Mfg. Co. v. Ellis, 68 Mich. 101; Platt v. Broderick, 70 Mich. 577; McCormick Mch. Co. v. Cochran, 64 Mich. 636. (2) "So it has been said that, although the purchaser's objections may have been ill founded or unreasonable in the opinion of others, yet, if they were made in good faith, he has the right to reject the article." Seeley v. Welles, 120 Pa. St. 69; Singerly v. Thayer, 108 Pa. St. 291.

*Chilton Atkinson, William E. Baird* and *C. B. Crawley* for respondent.

The petition in this case would not support a verdict in plaintiff's favor, even if such a verdict had been returned. Said petition not only fails to state facts

sufficient to constitute a cause of action, but discloses a state of facts which, together with all fair and reasonable inferences to be drawn therefrom, shows that plaintiff has no cause of action whatsoever.  Marshall v. Larkin, 82 Mo. App. 641; Phares v. Jaynes, 94 S. W. 588. Had the petition alleged that such exchange of cars was made under the original contract, or that the second machine was delivered and accepted with the understanding that it should supply the alleged defects of the first or that the warranty was renewed at the time of the exchange, the proposition would be different.  But nothing of the sort is alleged, nor can it be imported into the pleading by fair or reasonable intendment. This being so, plaintiff was not entitled to recover under her petition, no matter what state of facts the evidence may have disclosed.  The rule is that there can be no recovery upon a cause of action not pleaded in the petition, notwithstanding the evidence offered by plaintiff would have entitled him to recover, if such omitted cause of action had been pleaded.  Chitty v. Railroad, 148 Mo. 64; Cole v. Armour, 154 Mo. 333; Laclede Const. Co. v. Tudor, 169 Mo. 137; Studenroth v. Harmon, 106 Mo. App. 480; Halpin Mfg. Co. v. School Dist., 54 Mo. App. 371; Globe Furn. Co. v. School Dist., 51 Mo. App. 549; Gray v. Race, 51 Mo. App. 553; Wright v. Fonda, 44 Mo. App. 553.

STATEMENT.—Defendant is a Massachusetts corporation and has its chief office and place of business in Orange in said State.  During the period of the Louisiana Purchase Exposition in 1904, defendant had the Grout automobile on exhibition on the Exposition grounds.  Plaintiff, a resident of the city of St. Louis, in June, 1904, bought a Grout automobile of defendant, paying seven hundred dollars therefor.  In regard to the purchase, plaintiff's evidence tends to show that in a conversation with Charles Grout, president and man-

ager of defendant company, Grout said that his car was "simple in construction, easily run and operated by a lady, no manual labor, not as much as a gasoline car. I told him I didn't want that much labor; I made a point on that. He said, 'not as much labor as a gasoline car,' which I tried and could not do—he said not as much labor, no manual labor, 'you can keep it in your own stable with perfect ease, everything is reliable.'

"Q.   Well, did he say anything about the machine—about making the machine satisfactory to you? A. Yes, he said, 'I will guarantee that the machine will do all this, that it will be satisfactory.' I said, 'Is that what you will do?' He said, 'I will make that machine satisfactory to you.' "

Plaintiff testified a machine was sent out to her residence (4561 Morgan street) and a demonstrator furnished to teach her how to handle and operate it; that she objected to the machine for several reasons, and particularly, on account of an air pump attachment, which had to be worked by hand power, the labor required to work the pump being too heavy for her. At the suggestion of defendant, plaintiff was furnished another machine, having an automatic air pump attachment, which plaintiff testified defendant represented to her would work of itself and never require the use of hand power. The automobile was operated by steam power, generated by the consumption of gasoline, and the pump was also operated by steam through a valve on the boiler, so if there was no steam in the boiler and air was required, hand power had to be used to work the pump. Plaintiff testified she was not strong enough to work the pump and was compelled to keep the machine in a garage where she could have the air tank filled. Plaintiff testified she wished to keep the machine in her own stable at her home, but on account of being unable to pump it up she was forced to keep it in a garage. Plaintiff's

evidence is that she wanted a machine she could handle and operate herself and so informed Charles Grout, president and superintendent of defendant company, and she testified that Grout said ladies operated defendant's machines; that any lady could operate one of them; that the machine was peculiarly fitted to be operated by ladies. In regard to the second machine furnished plaintiff, her testimony, in part, is as follows:

"Q. What did you do with this car; did you operate it, attempt to operate it? A. I had it put in my stable as the other car I have described; but at the time I went to use it, to start it myself I found the same pumping to do on this car as the first car and I said, 'This is not any better than the other system,' and he said this was a new car from the factory, it would take time as in all machinery and let the machinery get tested. I was perfectly willing to do that and I said 'all right, we will try it again.' After that, every time we started the same trouble; I took it to the garage house of the —— Automobile Co., where I could get compressed air.

"Q. Were you able at any time to start this car, take it out of the stable, without that pump? A. No, sir, never at any time; the second car had to have hand pumping. I tried it just the same and I could not do it. I took it to the garage where they had compressed air.

"Q. What became of that car? A. I used that quite a while, giving them opportunity to repair it; they said it was lacking a valve you could very easily operate, or could fix the car. I wanted a car, I wanted them to make it satisfactory for me, but they could not do it. So I finally sent it back to them.

"Q. Did they ever do that? A. No.

"Q. Well, what finally was done with the second car? A. I turned it over to their company at the World's Fair grounds."

The following is Charles Grout's version of the transaction:

"Int. 5. Did you at any time sell her an automobile and if so state fully the transaction? Ans. I did sell her one at the World's Fair along about the first of June, she coming to our space and asking to be shown the cars, which I did and explained them to her thoroughly. She asked for a demonstration and as we had no demonstrating car I told her that we expected one and as soon as it came would be glad to demonstrate it. She called no less than a dozen times on different days said she had been out and tried two other makes and they were not what she wanted. Finally one day I took from the space a car as a demonstrator and I think within a day or two she came again and saw it outside of the building and asked if she could have a demonstration, and she insisted that I personally give this demonstration which I agreed to do that same evening, called at her house or her sister's house with the car. I first took her sister who directed the way to a particular place in the park, which she claimed the two previous cars which she rode in got stuck on the hill. After going up this hill she asked if I supposed she could do it herslf. I immediately changed seats and she operated the car up this same hill and around through the park for at least half an hour. We returned to her home and I took her sister, Miss Helen Walker, whom I gave practically the same demonstration and she expressed herself at least a dozen times how pleased she was with the car and on arriving home with her she asked her sister, and also her sister's husband, what they thought. They immediately told her that they didn't see how she could do better and she immediately said to me, 'All right, Mr. Grout, order me one by telegraph at once,' which I immediately did within twenty minutes.

"Int. 6. What words did she use, if you remember,

if not state in substance what she said when she expressed herself as pleased with the car? Ans. Her expressions were as follows: That it was the quietest little car she ever rode in, and it was so easy to handle, and it was so cute, and there was no odor, which she appreciated. In fact, her expressions of the car were more than good in every respect.

"Int. 7. Have you stated in substance all the conversation you had with Miss Walker when the contract of sale was made? Ans. Well, practically all, yes.

"Int. 9. Did she operate the car at the time referred to in giving her the demonstration. Ans. She did.

"Int. 10. It appears that after the delivery of a car to Miss Walker, an exchange of cars was made, and you sent or delivered to her another one. What was the reason of making this exchange? Ans. After the first car arrived she expressed herself as disappointed in the color, but admitted that it was her fault for not specifying, and as she had talked with some of her friends in regard to a different fuel system, she asked if she could not have this system changed on this first car. I immediately telegraphed for a few parts to make this change, but in the meantime she had made plans to go on a summer vacation for two or three months and as there were no roads for automobiling, she said, and as she was to ride horseback, that she didn't care to take the automobile with her and she voluntarily made me a proposition as follows: To take that first car and order her another one to be of the color she wanted and with this change of fuel system and have it there about the first of September, that it would be very satisfactory, and as we had a market for her first car it was a good proposition for us and we accepted it."

There is no evidence showing, or tending to show bad faith on plaintiff's part in refusing to keep the machine.

Plaintiff moved the court to instruct the jury as follows:

"1. The court instructs the jury that, if you believe and find from the evidence that the defendant, in effecting a sale of the automobile in controversy to the plaintiff, agreed that said car should be perfectly satisfactory to the plaintiff, that thereby it is meant not that said car should have been or ought to have been perfectly satisfactory to the plaintiff, but that, in fact, the same was perfectly satisfactory to her."

The court refused to grant this instruction and gave the following for defendant:

"2. The court instructs the jury that plaintiff was not the sole judge of the satisfactory character of the car sold to her by defendant, and if they believe from the evidence that said car was, or would have been satisfactory to a reasonable person for the purpose for which it was sold, they will find a verdict for defendant."

The verdict was for defendant. A timely motion for new trial was filed which the court overruled, whereupon defendant appealed.

BLAND, P. J. (after stating the facts).—1. The points relied on for a reversal of the judgment are error of the court in refusing plaintiff's instruction No. 1, and granting No. 2 for defendant. Plaintiff's evidence shows that defendant guaranteed the automobile to require no labor to operate it, to be easily run and operated by a lady and to be reliable in every way, and that defendant would make the machine satisfactory to plaintiff, or that it should be satisfactory to her. The court refused to instruct that if the machine was not satisfactory to plaintiff, she had a right to return it to the vendor and demand a return of the purchase price, and instructed that if the machine "was, or would have been, satisfactory to a reasonable person for the purpose for which it was sold," she had no right to return it to the

defendant. In other words, the court construed the stipulation in the contract, that the machine should be satisfactory to plaintiff, to mean that it should be satisfactory to a reasonable person for the purpose for which it was sold. Parties, under the law, are left free to make their own contracts. It is not a function of the courts to make contracts for them or to modify or change their contracts. The duty of a court is to interpret contracts by giving due force and effect to all of their terms, where it can be done, and to enforce them as made, and it is ordinarily immaterial to the court whether the contract is wise or unwise, reasonable or unreasonable, or the bargain a hard one. Such considerations furnish no ground or excuse for varying the terms of a contract or for a strained construction of it, for the purpose of relieving one of the parties of a hardship he has voluntarily taken upon himself. Contracts like the one under review, namely, to furnish an article satisfactory to the vendee, or to perform services satisfactory to an employer, have often been interpreted to mean what they say, that is, that the article furnished must be satisfactory to the vendee, or the services rendered satisfactory to the employer in order to show performance.

In the case of McCormick v. Finch, 100 Mo. App. 641, 75 S. W. 373, Finch purchased of the McCormick Harvesting Machine Company, a corn binder, which he agreed to take "if the machine gave satisfaction, and if not will not take it." The machine was not satisfactory and Finch offered to return it. In a suit on a note given for the purchase price of the machine, the court instructed the jury defendant had the right, under his contract of purchase of said machine, to refuse to keep it and pay for it, if he was not satisfied with it, and the instruction was approved.

In Zaleski v. Clark, 44 Conn. 218, the facts were as follows: "The plaintiff, a sculptor, made a plaster bust of the deceased husband of the defendant, under an

agreement that she was not to be bound to take it unless she was satisfied with it. When it was finished she was not satisfied with it and refused to accept it. In a suit for the price agreed it was found that the bust was a fine piece of work, a. correct copy of a photograph furnished by the defendant, and that it accurately portrayed the features of its subject; and that the only fault found with it was that it did not have the expression of the deceased when living, which was caused by no imperfection in the work but by the nature of the material." Held, that the plaintiff was not entitled to recover. As the bust was to be satisfactory to the defendant, it was for her alone to determine whether it was so, and it was not enough that her dissatisfaction was unreasonable.

In Brown v. Foster, 113 Mass. 136, plaintiff agreed to make defendant a satisfactory suit of clothes. Defendant returned the delivered suit as unsatisfactory. Held, on an action for the price, the suit could not be maintained. At pages 138-9 the court commenting on the instruction said: "If the plaintiff saw fit to do work upon articles for the defendant and to furnish materials therefor, contracting that the articles when manufactured should be satisfactory to the defendant, he can recover only upon the contract as it was made; and even if the articles furnished by him were such that the other party ought to have been satisfied with them, it was yet in the power of the other to reject them as unsatisfactory. It is not for any one else to decide whether a refusal to accept is or is not reasonable, when the contract permits the defendant to decide himself whether the articles furnished are to his satisfaction."

In Reeves & Co. v. Chandler, 113 Ill. App. 167, a contract was made for the purchase of a threshing outfit which gave to the purchaser the right to reject the same if, upon examination, it was not "satisfactory;" held, the purchaser had the absolute right to reject the outfit and that his reasons for doing so could not be investigated.

A contract to render satisfactory services was held, in Kendall v. West, 196 Ill. 221, to mean satisfactory to the employer and that the employer, if dissatisfied, might discharge the employee for any reason which he might deem sufficient.

In Seeley v. Welles, 120 Pa. St. 69, suit was for the purchase price of an Osborne reaper and binder. Defendant testified that he was to try the machine and if it worked to suit him and he could use it satisfactorily on his land, of which he was to be the judge, he was to take it upon the terms agreed upon; that upon the trial it was not satisfactory and he returned it. The court held that though the defendant's objections to the machine may have been ill-founded, or unreasonable in the opinion of others, yet if they were made in good faith he had the right, if his testimony was believed, to reject the machine.

In Goodrich v. Nortwick, 43 Ill. 445, it was held: "Where a party purchased of another a fanning mill, with an agreement, that he might return it within thirty days if it did not suit him, he became the sole judge under the contract, as to whether it suited. That question did not depend upon the opinion or judgment of others."

"In Singerly v. Thayer, 108 Pa. St. 291, the facts were as follows: "A. being engaged in erecting a high building, B. proposed in writing to him to put in a patent passenger elevator, of novel construction, 'warranted satisfactory in every respect,' and A. accepted the offer. When the elevator was substantially erected, but before final completion and adjustment, and before it was tendered by B. as completed, A. requested permission to use it in the work of completion of the building. After such use for about two months, A. alleged that it was not satisfactory to him, and after notice to B. to take it out at once, A. dismantled the elevator and machinery connected therewith, and stored the same. In an action by B. against A., in which the narr. averred that A. pre-

vented tthe completion of the work, the court below charged the jury that if they were of opinion, under the evidence that the elevator was reasonably fit for the purpose for which it was intended, and that the defendant ought to have been satisfied with it, the verdict might be for the plaintiff. The jury found for the plaintiff. Held to be error. The proposal being made to A. the fair inference was that the elevator was to be satisfactory to him, and while it could not be rejected for mere caprice, yet a bona fide objection by him to its working was a sufficient defence to the action."

In Koehler v. Buhl, 94 Mich. 496, it was held: "Where a person contracts to do work to the satisfaction of her employer, the employer is the judge, and the question of the reasonableness of his judgment is not for the jury." The Supreme Court of Minnesota, in the case of Frary v. American Rubber Co., 52 Minn. 264, made the same ruling on a similar contract, as also did the Supreme Court of Missouri in the case of Blaine v. Knapp & Co., 140 Mo. 241.

In Butler v. Winona Mill Co., 28 Minn. 205, the court held: "Under a special contract of employment, by which it was left to the defendant to determine and fix the plaintiff's compensation, after the services were performed, at such price and amount as, under all the circumstances, the defendant should consider right and proper, the defendant having determined and fixed the amount pursuant to the contract; Held, 1. That in the absence of fraud or bad faith, the amount so fixed is the measure of the compensation to which the plaintiff is entitled."

In Cann v. Rector, Wardens, etc., 111 Mo. App. l. c. 191, we held, Judge GOODE writing the opinion, that a stipulation in a contract, that "the party for whom work is to be done or to whom an article is to be furnished, may reject the work or the article unless it is satisfactory to him, gives that party the right to reject it as

unsatisfactory in any respect, if he acts in good faith."

In Mullally v. Greenwood, 127 Mo. 138, 29 S. W. 1001, BURGESS, J., reviews the cases and on pages 146-7, says:

"Most of the cases in which it has been held that the purchaser is to be satisfied and is the sole judge of the article to be furnished, are cases involving articles of fancy, taste; then such article may be arbitrarily rejected as unsatisfactory. Thus where the plaintiff contracted to make the defendant a satisfactory suit of clothes, and defendant returned the suit because unsatisfactory, it was held that an action for the price could not be maintained. . . .

"There are other cases which do not pertain to articles of taste or fancy which hold that it is a matter of contract, and that if the parties by contract agree that the article sold, or the services rendered, are warranted 'or agreed' to give satisfaction, the purchaser or master is vested with full power to determine whether the article or the work is satisfactory; and the reasonableness of the grounds of dissatisfaction can not be inquired into by the court in an action by the vender for the purchase money, or in an action by the servant for damages for his discharge." This case was followed by the Supreme Court in the case of Berthold v. St. Louis Electric Con. Co., 165 Mo. 280, where in a contract to deliver telephone poles it was provided the delivery should progress to the satisfaction of defendant, it was held, after a part performance of the contract, that plaintiff could not arbitrarily terminate it.

GRAVES, Chief Justice, in Wood Reaping & Mowing Machine Co. v. Smith, 50 Mich. 565, at pages 569-70 said:

"The cases where the parties provide that the promisor is to be satisfied, or to that effect, are of two classes; and whether the particular case at any time falls within the one or the other must depend on the special cir-

cumstances and the question must be one of construction.

"In the one class the right of decision is completely reserved to the promisor and without being liable to disclose reasons or account for his course, and a right to inquire into the grounds of his action and overhaul his determination is absolutely excluded from the promisee and from all tribunals. It is sufficient for the result that he willed it. The law regards the parties as competent to contract in that manner, and if the facts are sufficient to show that they did so, their stipulation is the law of the case. The promisee is excluded from setting up any claim for remuneration, and is likewise debarred from questioning the grounds of decision on the part of the promisor, or the fitness or propriety of the decision itself. The cases of this class are generally such as involve the feelings, taste or sensibility of the promisor, and not those gross considerations of operative fitness or mechanical utility which are capable of being seen and appreciated by others. But this is not always so. It sometimes happens that the right is fully reserved where it is the chief ground, if not the only one, that the party is determined to preserve an unqualified option, and is not willing to leave his freedom of choice exposed to any contention or subject to any contingency. He is resolved to permit no right in any one else to judge for him or to pass on the wisdom or unwisdom, the justice or injustice of his action. Such is his will. He will not enter into any bargain except upon the condition of reserving the power to do what others might regard as unreasonable."

Plaintiff's evidence shows she wanted an automobile that she could operate and run without manual labor; that she had some acquaintance with automobiles and had seen most of the machines on exhibition at the World's Fair; that defendant's superintendent assured

her a lady could operate defendant's cars without trouble or manual labor, and stipulated the machine should be satisfactory to her. An automobile is not a work of art, nor a machine about which there can be any very peculiar fancy or taste but it is not a common, gross thing, like a road-wagon or an ox-cart. It is a complicated machine and cannot be safely run by an inexperienced person and is not ordinarily run by a lady chauffeur. Defendant's superintendent assured plaintiff that she could run its automobiles and expressly stipulated that the one furnished her should be satisfactory. In these circumstances, it seems to us the case comes within the class where the right of decision as to whether or not the article furnished is satisfactory, was reserved for the plaintiff and we conclude that the court erred in refusing to grant plaintiff's instruction No. 1, and in giving No. 2 for defendant.

2. The following is stated in the petition:

"For cause of action, plaintiff states that on or about the —— day of July, A. D. 1904, she purchased from the defendants a certain Grout automobile car and paid to the defendants therefor the sum of seven hundred dollars ($700); that at the time plaintiff purchased from defendant said car and paid therefor, and as part of the contract of the sale of said car by defendants to plaintiff, defendants represented to and agreed with plaintiff that said car could be operated with ease by a lady; that no manual labor was required in the operation of said car and that said car should be perfectly satisfactory to the plaintiff.

"Plaintiff further states than on or about the —— day of July, 1904, defendants delivered a Grout automobile car to the plaintiff, in pursuance of her said contract of purchase; that said car could not be operated by a lady and could not be operated without great manual labor and was not satisfactory to the plaintiff; that later on, and on or about the twenty-first day of Sep-

tember, 1904, defendants delivered to plaintiff another Grout automobile car in exchange for said car at first delivered plaintiff; that said last car delivered to plaintiff as aforesaid, on or about the twenty-first day of September, 1904, cannot be operated by a lady and cannot be operated without great manual labor and is not now, and at no time has been, satisfactory to the plaintiff."

Defendant contends that the statement, in respect to the exchange of the first for the second machine, is a separate and distinct count,—a separate and distinct statement of a cause of action — and the one on which plaintiff must reply to recover, and as it fails to allege the second machine was delivered under a guarantee that it should be satisfactory to plaintiff, no cause of action is stated in the petition. It is not, in terms, alleged that the first machine was bartered for the second, nor will a proper construction of the petition authorize the inference that plaintiff exchanged or traded the first for the second machine. The petition should be construed as a whole, not in parts or by piecemeal. When construed as a whole, it states and was intended to state, in substance, that defendant sold plaintiff an automobile, which it guaranteed would be satisfactory to her, and in pursuance of the contract delivered a machine, which proved to be unsatisfactory and, on being notified, defendant took the machine back and delivered plaintiff a second one in lieu of the first, not in exchange for it but to take its place and fill the warranty defendant had made; in other words, that the second machine was delivered in pursuance of and to comply with the original contract of sale and not under a new contract for the exchange of one machine for another of the same pattern.

3. It is further contended that plaintiff's own evidence conclusively shows she waived her right to recind the contract. This position is also taken here for the first time. On the trial a correct instruction was

Stepp v. Railroad.

given at the request of defendant, submitting the question of waiver to the jury, and we do not think the evidence of plaintiff is at all conclusive that she by her conduct waived her right to rescind the contract.

4. Defendant insists that the evidence fails to show the machine was actually tendered to defendant, or was so tendered that nothing on its part was necessary but to signify its acceptance or rejection. Plaintiff testified that at her request, defendant's agents made repeated efforts to repair the machine and make it satisfactory, "but they could not do it," and she finally sent it back, turned it over to the company at the World's Fair grounds. This evidence shows she not only tendered the machine to defendant, but actually turned it over and delivered it to defendant.

For error in giving and refusing instructions, the judgment is reversed and the cause remanded. All concur.