WILBUR STOCK FOOD COMPANY, Respondent, v.
S. A. BRIDGES, Appellant.

Springfield Court of Appeals, December 4, 1911. Motion for
Rehearing Overruled December 23, 1911.

1. **CONTRACTS: Sale of Goods: Vendor Failing to Comply with
Terms of Offer.** Defendant answered an advertisement of the
plaintiff asking for information regarding their stock tonic
and their "wonderful offer." In reply she received a letter in
which plaintiff agreed to give the defendant, absolutely free,
a silver watch in addition to a twenty-five pound pail of stock
tonic, if defendant would allow plaintiff to ship with her free
goods, four extra pails of stock tonic, which she was to sell
for $3.50 per pail and remit therefor to the plaintiff $2 every
thirty days, until $13 was paid for the extra pails. Defendant
signed the letter of acceptance accompanying the offer and the
stock food was shipped, but the watch was not sent with the
other goods, a certificate being sent by mail which entitled
the defendant to the watch when full payment had been made
for the extra pails of stock tonic shipped. Defendant re-
fused to take the stock food from the freight depot and this
case is an action on the account. The terms of plaintiff's
offer are examined and *held* that defendant was not liable;
that plaintiff by failing to ship the watch with the stock tonic
had not complied with the terms of its offer.

2. ———: **Construction: Hard Bargain: Duty of Court.** The duty
of a court is to interpret contracts by giving due force and
effect to all their terms, where it can be done, and to enforce
them as made, and it is ordinarily immaterial to the court
whether the contract is wise or reasonable or the bargain a
hard one.

3. ———: ———: **Expressed Intention.** The law imputes to a
person an intention corresponding to the reasonable meaning
of his words and acts and excludes all questions in regard
to his unexpressed intention.

4. ———: **Correspondence: Question of Law: Sale of Goods.**
Where the contract for the sale of goods is made up of cor-
respondence, the question of the legal effect of such correspond-
ence is one of law for the court and in construing such contract
the intention is to be collected from the whole of the corres-
pondence.

Appeal from Lawrence Circuit Court.—*Hon. Carr McNatt*, Judge.

REVERSED AND REMANDED (*with directions*).

*Oscar B. Elam* for appellant.

(1)   The contract declared upon was created by correspondence, if created at all.   Hence, it must appear to sustain the action that the very terms offered by the one party were accepted by the other.   Union Service Co. v. Drug Co., 48 Mo. App. 336; Robinson v. Railroad, 75 Mo. 493; Strange v. Crowley, 91 Mo. 287; 1 Page on Contracts, 24; Cangas v. Mfg. Co., 37 Mo. App. 297; Batavia v. Railroad, 126 Mo. App. 13.   (2)   Retention of the bill of lading by plaintiff was a retention of the title to and possession of the goods.   Skilling v. Bollman, 73 Mo. 669; Railroad v. McLiney, 32 Mo. App. 175; Neil v. Store Co., 149 Mo. App. 59; Gill & Fisher v. Con. Co., 84 Mo. App. 456; Scharff v. Meyers, 133 Mo. App. 428; Hunter Bros. v. Stanley, 111 S. W. 896; Warehouse Co. v. Rrailroad, 124 Mo. App. 545; Van Buskirk v. Railroad, 131 Mo. App. 357.   (3)   The legal effect of the correspondence is a question of law for the court.   Union Service Co. v. Drug Co., 148 Mo. App. 337.   (4)   If the interpreted contract demands successive steps, now a step by the one party and then a step by the other, whenever on the one side all is done which is to precede performance on the other, the party of the other side breaks it if he simply neglects to take his step, though no demand on him be made; but while anything, however slight, remains unperformed by the former party, there is no breach by the latter.   Bishop on Contracts, secs. 1434, 1440; Monks v. Miller, 13 Mo. App. 363; Deny v. Kile, 16 Mo. 450.

*Theodore Alvord* for respondent.

(1) Delivery by the consignor of goods to a common carrier for transportation to the consignee vests in the latter the title. Scharff v. Meyer, 123 Mo. 445; Bank v. Smith, 107 Mo. App. 188; Tuttle & Pike v. Bracey-Howard, 136 Mo. App. 315. (2) A judgment for the right party will not be reversed on account of errors in the trial of the case. Railroad v. Sloop, 200 Mo. 219; Foster v. Railroad, 112 Mo. App. 73. (3) Cause must be heard in appellate court upon same theory as tried in court below. St. Louis v. Contracting Co., 210 Mo. 502.

NIXON, P. J.—This was an action on an alleged contract whereby S. A. Bridges agreed to buy four pails of stock food or tonic of the respondent, a corporation organized and doing business under the laws of Wisconsin. The amount in involved is $14.25. It seems that the defendant, S. A. Bridges, is a woman, and that the transaction was in fact with her son who signed her name to the ''letter of acceptance'' hereinafter referred to, but she makes no point on this. In the circuit court of Lawrence county the plaintiff prevailed and defendant has appealed. In the commencement of the correspondence S. A. Bridges answered an advertisement of the respondent asking for information regarding the stock tonic and their wonderful offer. In reply came the letter which contains the offer. The body of the letter is proceeded by advertising matter, telling what the tonic would do for stock and showing in full a letter in the nature of a testimonial from the Pabst Brewing Company, followed by the letter to S. A. Bridges, to-wit:

''We have your favor of recent date in answer to our advertisement in which we offer a 25℔ pail of Wilbur's Stock Tonic absolutely free where we have no agent. Now upon looking up the matter it seems

we have an agent in your county but not in your neighborhood and we have arranged matters so you can get your $3.50 pail of Wilbur's Stock Tonic free of all charge and in addition to that, in order to help introduce our tonic we are going to make you an offer such as you never had before.

"We presume you could use a beautiful silver watch with the famous New York Standard movement patent dust band and regulator fully guaranteed for ten years, exactly like photograph enclosed. A watch which is solidly built in every detail. Not a cheap fragile affair but one which will stand the wear and tear of hard every day usage a life time. Note the handsome locomotive design engraved on the case of the watch.

"Well, we are actually going to make you a present of this handsome time piece *Absolutely Free* in addition to your free 25℔ pail of Wilbur's Stock Tonic.

"Remember the watch is entirely separate from our offer of a pail of Stock Tonic and you are to have both of these presents free of charge simply for helping us introduce a few pails of Wilbur's Stock Tonic among your neighbors. Now we honestly want to know if you ever had such an offer as this before. We actually mean to give you the watch valued at $10 anywhere, and the $3.50 pail of Wilbur's Stock Tonic, total, $13.50, for a few minutes of your time. That seems like an unheard of offer, doesn't it, but in addition to all this we are going to show you *how you can make* $4.50 *cash besides*. The enclosed *letter of acceptance* fully describes our great offer. By reading it over carefully you will see that all we ask is that you allow us to ship with your free goods four extra pail of stock tonic. These pails you can easily sell to your neighbors in an hour or so. We don't want a cent of money in advance. We don't want a cent in payment for your New York Standard watch or your

25℔ pail of stock tonic now, or any other time. All we ask is that you distribute the extra pails among your friends at $3.50 each and send us only two dollars every thirty days until we have received thirteen dollars in all for the extra pails. Remember, you can also sell your own pail for $3.50, if you so desire, and thus clean up $4.50 clear profit. You see if you sell all five pails for $3.50 each that means $17.50 while your are to send us only $13 for four of the pails. Thousands of intelligent farmers have accepted this great offer simply to condition and fatten their own stock. They won't sell a pound because they realize that Wilbur's Tonic at the regular price would cost them $3.50 per pail while by accepting the free watch offer they not only get the beautiful standard time piece but they also get five pails of Wilbur's Tonic at an actual saving of $4.50 cash. . . .

"Now all we ask is that you compare our offer with any that was ever made you by another company. When you study the matter over, what do you find? You find that we are actually giving you 125℔ of Wilbur's Stock Tonic (sold everywhere for $14 per hundred) and a beautiful fully guaranteed New York Standard watch, worth at any retail store and we don't ask one cent from you in advance. We simply ask that you send us only such small amount monthly that you will never notice it and don't forget that you are not paying one cent for one of the 25℔ pails, nor one cent for the New York Standard watch. You will also appreciate the fact that we are asking less than the regular price for the four extra 25℔ pails and you have a chance to make $4.50 cash in clear money besides. Can you afford to pass this opportunity?

"Don't forget we positively guarantee Wilbur's Stock Tonic the best conditioner, feed saver and preventitive of disease that money can buy. Fill out your *letter of acceptance* and mail it to us at once. Write your address plainly so that the goods will reach

you safely. We will hold this offer open to you for a few days' time so we trust you will write to us and send in your *letter of acceptance* at once.

"Yours very truly,

"E. B. MARSHALL,

"Secretary Wilbur Stock Food Co.

"P. S. We forgot to tell you that the New York Standard watch is a stem set and stem wind piece of the most modern pattern."

The "letter of acceptance" was a printed form and was, in part, as follows:

"FILL THIS OUT AND MAIL TO US TODAY.

"Wilbur Stock Food Co.,

"Milwaukee, Wis.        , Date——190—.

"I accept your offer of the N. Y. 'Standard' watch fully guarantee and the 25-pound pail of Wilbur's Stock Tonic (value $3.50) both absolutely free and you may ship me four extra pails of Wilbur's Stock Tonic, which I can use or sell, as I please and I am not to send you any money whatever in advance, but I will send you two dollars every thirty days, until I have sent $13 in all, for the four extra pails. If I sell all five of the pails for $17.50 I am to have the extra $4.50 myself in addition to the silver watch, which I get free. You may ship my goods and mail my watch certificate to the following address:

"Sign your name here——S. A. BRIDGES,

"Postoffice, Aurora, County, Lawrence, State Missouri.

"Ship to Aurora, care of Frisco.

"Your references:

"The following business houses: White's Grocery, Scott's Grocery. I own 5 horses, 6 cattle, 29 hogs, 5 dozen poultry. I rent 40 acres of land. I am 59 years. I give as reference Aurora Bank."

The remainder of the letter of acceptance is not material. There is also a coupon filled out by S. A.

Bridges ordering the tonic shipped in iron pails—to cost $1 extra.

The tonic was shipped and the station agent at Aurora testified that S. A. Bridges was notified of the arrival of the goods, but never took them out or called for them. Defendant was not permitted to show that the goods were shipped back to the plaintiff because the station agent at Aurora could not remember whether it was done on plaintiff's order and he had not found time to look for any correspondence on the subject although given a week's notice. The evidence shows that a short time after the letter of acceptance was received by plaintiff, the tonic was shipped, and the bill for the purchase price together with the following "Watch Certificate" were sent by mail to S. A. Bridges:

"Milwaukee, Wis., Jan. 8, 1910.

WATCH CERTIFICATE NO. 37014.

"This certificate entitles S. A. Bridges of Aurora, Mo., to one fully warranted watch absolutely free in accordance with the terms specified in the special premium offer. The Wilbur Stock Food Co., of Milwaukee, Wis., hereby agrees to forward the Silver Watch (all charges prepaid) immediately upon receipt of this certificate and remittance for bill of merchandise amounting to $14.25 as per agreement."

At the close of the evidence the defendant requested and the court refused to give a peremptory instruction for the defendant in the nature of a demurrer to the evidence.

At plaintiff's request the court instructed the jury that by the terms of the written contract the defendant became liable to pay to the plaintiff the sum of two dollars every thirty days until the amount of fourteen dollars in all had been paid to plaintiff, "upon shipment by plaintiff to the defendant of five twenty-five

pound pails of stock food, in Japanned iron pails, and the mailing of the watch certificate in said contract described to the defendant at Aurora, Missouri. Therefore, if you find and believe from the evidence in this case that the said stock food and pails were shipped to the defendant at Aurora, Missouri, and received by the Frisco railroad at Aurora, and notice of said receipt of said stock food was given to the defendant by the Frisco Railroad Company, then your verdict shall be for the plaintiff in the sum of fourteen dollars, notwithstanding that the jury may further believe from the evidence that the defendant refused to accept said goods and received no benefits therefrom.''

Plaintiff's letter containing the offer cannot be read without coming to the conclusion that the one making it intended to impress the promisee with the fact that the watch and the extra pail of stock tonic would be sent along with the other four pails. There is no intimation to the contrary. True, this may be said to be an extraordinary offer but the conclusion that this was the offer as it actually appears on paper is not at all inconsistent with the wording of the offer which is drawn in superlatives. It reads: ''We are going to make you an offer such as you never had before.'' ''We are going to make you a present of this handsome time piece *absolutely free* in addition to your 25℔ pail of Wilbur's Stock Tonic.'' ''Now we honestly want to know if you ever had such an offer as this before.'' ''That seems like an unheard of offer, doesn't it, but in addition to all this we are going to show you *how you can make* $4.50 *cash besides*.'' ''All we ask is that you allow us to ship with your free goods four extra pails of stock tonic.'' ''We presume you could use a beautiful silver watch with the famous New York Standard movement patent dust band and regulator fully guaranteed for ten years, exactly like photograph enclosed. A watch which is

160 App.—9

solidly built in every detail. Not a cheap fragile affair but one which will stand the wear and tear of hard every day usage a life time. Note the handsome locomotive design engraved on the case of the watch. Well, we are actually going to make you a present of this handsome time piece *absolutely free* in addition to your 25℔ pail of Wilbur's Stock Tonic." "We don't want a cent of money in advance." "Now all we ask is that you compare our offer with any that was ever made you by another company. When you study the matter over, what do you find? You find that we are actually giving you one hundred and twenty-five pounds of Wilbur's Stock Tonic (sold everywhere for $14 per hundred) and a beautiful fully guaranteed New York Standard watch, worth $10 at any retail store, and we don't ask a cent from you in advance. We simply ask that you send us only such small amount monthly that you will never notice it and don't forget that you are not paying one cent for one of the 25℔ pails, nor one cent for the New York Standard watch." "Can you afford to pass this opportunity?" "P. S. We forgot to tell you that the New York Standard watch is a stem set and stem wind piece of the most modern pattern."

If only the extra pail of stock tonic was to be sent along and not the watch, why did the promisor say, "All we ask is that you allow us to ship with your free *goods* four extra pails?" There is no room for doubt or construction as to the expressed intention of the promissor. Having made an extraordinary proposition, the promissor was bound by it when accepted. The duty of a court is to interpret contracts by giving due force and effect to all their terms, where it can be done, and to enforce them as made, and it is ordinarily immaterial to the court whether the contract is wise or reasonable, or the bargain a hard one. [Walker v. Grout Bros., 124 Mo. App. 628, 102 S. W. 25.] The law imputes to a person an intention corre-

sponding to the reasonable meaning of his words and acts. [9 Cyc. 245, citing Coleman v. Roberts, 1 Mo. 97; Haubelt v. Rea, 77 Mo. App. 672; Esterly Harvesting Mach. Co. v. Criswell, 58 Mo. App. 471; Brewington v. Mesker, 51 Mo. App. 348.] It judges of his intention by his outward expressions and excludes all questions in regard to his unexpressed intention. [9 Cyc. 246.] This contract was brought about wholly by correspondence. The legal effect of such correspondence was a question of law for the court. [Union Service Co. v. Drug Co., 148 Mo. App. l. c. 337, 128 S. W. 7; Eagle Mill Co. v. Caven, 76 Mo. App. 458, 462.] Nor do we look merely to the offer, for, in construing a contract, the intention is to be collected from the whole of it. [Davis v. Hendrix, 59 Mo. App. 444.] The letter of acceptance (which was a filled-in form furnished by the plaintiff) said nothing about the watch not being sent on with the stock tonic. It is drawn in the same style as the offer, the first words being, ''I accept your offer of the N. Y. 'Standard' watch fully guaranteed and the twenty-five pound pail of Wilbur's Stock Tonic, which I can use or sell, as I please, and I am not to send you any money whatever in advance.'' It is apparent that the expressed intention was to sell five pails of stock tonic and one silver watch for $14.25; the fact that the word ''gift'' or its equivalent was iterated and reiterated makes no difference in the legal effect of the offer; it was an out-and-out agreement to sell and that is all that can be made of it. The only words in the entire correspondence which *could* be construed as meaning that the watch was to be retained by the plaintiff until the tonic was sold by the defendant, or paid for, appear just before the signature on the letter of acceptance and are, ''You may ship my goods and mail my watch certificate to the following address.'' Nothing had been said about a ''watch certificate.'' Defendant might well have thought it was a guarantee

that case with the watch. With the aid of plaintiff's evidence and the theory it has advanced, we are able to see that plaintiff had a secret intention at the time of making the extraordinary offer to only give away a pail of tonic and make the defendant work for the $10 silver New York Standard watch, holding it as security. If the plaintiff meant to ship the tonic and keep the watch until payment of the purchase price it could easily have said so because a person making an offer has the right to make it on such terms as he pleases. Having used language which is unambiguous and which means on its face that the watch would be a part of the one transaction, that was the contract, and the furnishing of the watch in accordance therewith became a condition precedent to liability on the part of the defendant. The offer was intentionally drawn to convey a false impression and was another of the myriad schemes to mislead the unwary. Knowledge of human nature is a great asset in the hands of a crafty advertiser and it was utilized to the extreme in this transaction. The courts cannot lower the standard of fair dealing and common business honesty by lending their sanction to contracts procured by misrepresentations. The judgment is reversed and the cause remanded with directions to the trial court to enter judgment for the defendant, with costs. All concur.