## A. B. CAMPBELL v. MARY L. SNODDY.

### Springfield Court of Appeals, March 16, 1923.

1. **EVIDENCE: Permitting Evidence of Vendor's Understanding of Contract Held Error.** Where purchaser, after receiving letter from vendor that a farm could be bought on a cash payment of $1000 and balance $500 a year until $4000 was paid, wired vendor that for immediate acceptance he would give $500 cash, 2500 twelve months, and such offer was accepted by vendor, thereby fixing the contract price as $3000, it was error to permit vendor to testify that he understood it to mean an acceptance of his offer except as to the time of payments, and that, in lieu of paying $1000 cash, purchaser was offering to pay $500 cash, $2500 in one year and two $500 notes in subsequent years.

2. **FRAUDS, STATUTE OF: Contract Held Valid.** Where letters between vendor and purchaser relating to the sale of land and describing the same were followed by telegrams between them containing an offer to buy and an acceptance thereof, the contract was not void under the statute because the telegrams did not describe it.

3. **APPELLATE PRACTICE: Finding Sustained.** Findings of fact by the court sitting without a jury sustained by evidence will not be disturbed on appeal.

Appeal from the Circuit Court of Jasper County.—*Hon. Grant Emerson*, Judge.

AFFIRMED.

*J. D. Harris* and *Wm. Thompson* for appellant.

*McReynolds & McReynolds* and *John H. Flanigan* for respondent.

FARRINGTON, J.—Plaintiff brought this suit for breach of contract, recovered judgment for $1000 in the circuit court from which defendant appealed.

The contract sued upon consisted of telegrams and letters. The subject-matter of the contract was eighty acres of land in Jasper County owned by the appellant, which she had placed for sale with her brother, Wm. Thompson, who had power of attorney in fact to act for her. The suit was brought against the owner of the land and her agent but was dismissed as to the agent, Wm. Thompson, after the evidence was all in.

The evidence discloses that Thompson placed an advertisement in a Joplin paper stating that the property would be sold cheap, "$500 a year until paid for." The defendant seeing the advertisement wrote to Thompson on February 20, 1921, as follows:

"Seeing your "ad" in Joplin Globe to sell or rent your eighty acres of the old Stout farm am writing to know the least dollar that will buy it—If your price is right I'll buy it—If can't I might rent it—Please let me hear promptly & fully & oblige."

In answer Thompson wrote him as follows, on March 2, 1921:

"You can buy it for all cash $4000 or on a cash first payment of $1000 or more, & balance $500 a year & six per cent interest till paid for."

"It is clear—no mortgage on it—It is worth really twice that amount but we are so far away—I just heard Mr. Boren who owns land near by & S. west of it had

struck fine prospect for lead at fifty feet—do you know about this? If it is true we would want more—say seventy-five dollars an acre on same terms as above stated. If this suits you let me know at once as others are figuring on it and may deposit first payment in bank and wire me to fix up papers, abstract & etc. I will go to Carterville to fix it all up as I have other business in Mo. if I get word by mail or wire to do so and that first payment has been deposited in any bank payable to my order on fixing up papers & etc.

"If you do not want the land go to Pete J. Galligan, who owns and lives on the forty joining on the east. He will show you lines, it is fenced by barbed wire fence and has no house on it; it lays on north side of the road length ways north and south & is the north eighty of the E. Stout farm."

The plaintiff lived at Carterville and Thompson lived at Turlock, California. On March 7th, plaintiff wired Thompson as follows:

"Webb City, Mo. Mar. 7, 1921.

"William Thompson,

"235 West Main St. Turlock, Calif.

"For immediate acceptance by wire will give five hundred cash twenty-five hundred twelve months six per cent another deal pending is why must know time limit about up for answer. Bournes reported lead find false not even a shine and quit at fifty-seven feet."

On the next day, March 8th, Thompson wired plaintiff as follows:

"Have bank wire me you have deposited five hundred dollars to my credit on this sale and I will come in few days."

Plaintiff then had First National Bank of Carterville send the following message: on March 9th:

"A. B. Campbell has deposited five hundred dollars to be paid you on delivery of warranty deed and abstract showing title clear to east half southwest quarter section nine township twenty eight range thirty two Jasper County."

On March 9th, Thompson wrote plaintiff as follows:

"Your message of Mar. 8th just received signed A. D. Campbell. I asked you to have the bank in which you made the deposit wire me that $500 had been deposited to my credit subject to final closing of this deal but you have not done so. I do not want to go so far and will not go on uncertainty. If you have the bank wire me you have deposited $500 to my credit to await abstract, deed & etc., I will leave here in a week or ten days maybe sooner, as I have some business here to arrange so I can leave. Do this at once and I will notify you by letter or wire when to expect me. I have about a dozen letters, but so far your offer is first, but until finally closed, something might change it. Do you know of any lead or zinc strike anywhere around or near this land? I am expecting other letters every mail."

On March 13th, plaintiff wired Thompson as follows:

"Your letter ninth received my banker wired you night of ninth money deposited for you delivery warranty deed abstract to date showing clear title if possible wire me day you will be here as I am often out of city and State."

Thompson wrote plaintiff March 17th as follows:

"Your wire just rec'd. I will leave here for Mo. in ten days or less; will stop two or three days in Los Angeles on business & then go for Carterville. May stop at Kansas City my former home one day & then see you. We have owned this eighty acres in the family over twenty years—bought it of the Stouts—who owned it about forty years."

On March 27th, Thompson wrote to First National Bank, with whom the $500 was deposited, the following:

"Please say to Mr. Campbell who deposited $500 with you for me that I will be in Carterville in three or four days—leave here tomorrow & stop day or two in Okla. on business."

When Thompson came to Carterville to close up the deal with plaintiff he contended, and contends in this court, that the foregoing letters and telegrams consti-

tuted a sale for $4000, while plaintiff contended, and does so still, that he made a proposition to pay $3000 for the land and that his offer was accepted. Thompson refused to convey for less than $4000, hence this suit by plaintiff for $1000 damages.

The evidence clearly sustains a judgment for $1000 if plaintiff is entitled to a judgment at all. The trial court, sitting as a jury, found a judgment for $1000 in plaintiff's favor. The defendant relies on the proposition that the above correspondence shows that there was no mutual meeting of the minds and hence no enforceable contract, relying on cases such as Egger v. Nesbit, 122 Mo. 667, 27 S. W 385; Branigan v. Jefferson Mut. Fire Ins. Co., 102 Mo. App. 70, 76 S. W. 643. This contention comes about by Thompson on the trial testifying, over plaintiff's objection, that when he received plaintiff's telegram of March 7th stating, "For immediate acceptance by wire will give $500 cash, $2500 twelve months six per cent," he understood it to mean an acceptance of his $4000 offer contained in his letter of March 2nd, above quoted, except as to the time of payments, that is to say he understood when he received this telegram and when he wired his acceptance on March 8th, that the plaintiff, in lieu of paying $1000 cash, balance in $500 a year notes, was offering to pay $500 cash, $2500 in one year and two $500 notes in subsequent years.

While the court trying this case without a jury permitted him to testify as to his understanding, we think that it was error to allow this testimony. See following cases holding it incompetent: Machine Co. v. Criswell, 58 Mo. App. 471; Haubelt Bros. v. Mill Co., 77 Mo. App. 1. c. 681; Seavy & Flarsheim Brokerage Co. v. Monarch Peanut Co., 241 S. W. 643; Wilbur Stock Food Co. v. Bridges, 160 Mo. App. 122, 141 S. W. 714. In Bunce, Adm'r of Beck, v. Beck, 43 Mo. 279, the Supreme Court held, "So it has been held that parol evidence is not admissible to prove how a written contract was understood by either of the parties in an action upon it at law in the absence of fraud." [See, also, Teachout v. Clough,

143 Mo. App. 474, 127 S. W. 672, and Corpus Juris 13, 265, 272 and 523.]

The correspondence we have set out shows that negotiations were going on between these parties for this land from February 20, 1921; that Thompson made a proposition for acceptance in his letter of March 2nd to plaintiff, which was by plaintiff's telegram of March 7nd rejected (see Egger v. Nesbit, 122 Mo. 675, 676, 27 S. W. 385), and a new proposition made by plaintiff. The offer of plaintiff is explicit and unambiguous and called for an acceptance or a rejection. On March 8th, Thompson made a conditional acceptance by requiring that bank wire him that $500 had been deposited to his credit. Complying with this condition the plaintiff had the bank wire Thompson that $500 was deposited. That Thompson understood that the $500 was deposited to be paid on delivery of warranty deed and abstract showing clear title to date is shown when he answered the telegram of March 13th, sent by plaintiff, referring to abstract and deed, by letter of March 17th stating that he would come to Missouri to close the deal; and again in his letter to plaintiff dated March 9th he expressly states: "If you have bank wire me you have deposited $500 to my credit to await abstract, deed, etc., I will leave here in a week or ten days maybe sooner." It will also be noted that Thompson refused to convey when he came only on the ground that there was a mistake in the amount of the purchase money.

As we view these letters and telegrams, these parties entered into a contract for the sale and purchase of the land for a consideration of $3000, and although Thompson might have been laboring under the impression that he was selling this land for $4000, the declarations made in the correspondence is all that the court could look to to discern what were the intentions of the parties, and whether their minds met.

We find no merit in the claim that the offer by the plaintiff of March 7th and the acceptance by Thompson of March 8th did not describe the land and hence the con-

tract is void under the Statute of Frauds. The rule laid down in Peycke Bros. v. Aherns, 98 Mo. App. 456, 72 S. W. 151, clearly holds that the transaction in this case is not invalidated by the Statute of Frauds. [See, also, Leesly Bros. v. Fruit Co., 162 Mo. App. 195, 144 S. W. 138; Peirson-Lathrop Grain Co. v. Barker, 223 S. W. 941; Edmonds v. Cochran, 226 S. W. 1007; 27 C. J., 259, 260.]

We find nothing in the following cases, and other cases cited by appellant, holding that the contract in this case is void under the Statute of Frauds. Cases relied on by appellant are: McKeag v. Friednor, 74 Mo. App. 594; Fox v. Courtney, 111 Mo. 147, 20 S. W. 20. [Ringer v. Holtzelaw, 112 Mo. 519, 20 S. W. 800; Hain v. Burton, 118 Mo. App. 577, 585, 94 S. W. 589.]

There was no competent evidence offered that the contract was by mutual consent cancelled when Thompson and plaintiff found they could not agree to carry out the sale.

We agree with respondent that there is not a good defense made in the answer charging that plaintiff was guilty of fraud and deceit in getting defendant to enter into this contract, yet be that as it may, the court gave defendant's instruction on the defense and found the facts against her. It being a law case, and evidence to sustain the finding, disposes of that question so far as the appellate court is concerned.

Finding no reversible error in the trial, the judgment is affirmed. *Cox, P. J.,* and *Bradley, J.,* concur.