## LEESLEY BROTHERS, Appellants, v. A. REBORI FRUIT COMPANY, Respondents.

Springfield Court of Appeals, February 5, 1912.    Motion for Rehearing Overruled, March 4, 1912.

1. **APPEAL AND ERROR: Involuntary Nonsuit.**   Where the record shows that after defendant's demurrer to plaintiffs' evidence had been sustained by the court over plaintiffs' objection and exceptions and by reason thereof the plaintiffs were forced to and did take an involuntary nonsuit, with leave to set the same aside, plaintiffs would have a right to appeal and this case is distinguished from those where the court has merely declared its intention to sustain a demurrer to the evidence and the parties take a nonsuit before the peremptory instruction is actually given.

2. **PLEADING: Statute of Frauds: General Denial.**   The defense of the Statute of Frauds is available to defendant under a general denial and where defendant denies the making of the contract sued on, he may object that it is within the Statute of Frauds, though he does not plead the statute.

3. **STATUTE OF FRAUDS: Telegrams: Letters.**   A contract may be made by telegrams or by mail and telegrams and will con-

stitute a valid contract under the Statute of Frauds. In this case the memoranda of sale of personal property, together with the letters and telegrams are examined and *held* sufficient to constitute a valid contract under the statute.

4. ———: Memoranda: Identification of Subject Matter: Knowledge of Parties: Interpretation by Court. The Statute of Frauds requires that the writings containing the contract should embody in itself all the essential elements or terms of the contract, but the court is allowed to interpret the writings in the light of all the circumstances and when the court is put into possession of the knowledge which the parties to the transaction had at the time; and it can be seen from the memoranda who the parties to the contract were, what the subject of the contract was, and what were the terms, then the memoranda should be held sufficient.

5. ———: Several Writings. The Statute of Frauds does not require that the whole bargain or agreement between the parties should be contained in one writing, but all the writings, telegrams or letters referring to and forming a part of the same subject matter of the contract, may be considered and construed.

6. ———: ———: Sale of Personal Property: Sufficiency of Contract. The letters and telegrams covering the purchase of a carload of onion sets, which the purchaser refused to accept after shipment to him and after the seller had reduced the price ten per cent in compliance with the proposition made by the purchaser, are examined and held sufficient under the Statute of Frauds to make a binding contract of purchase.

7. ———: Sale of Personal Property: Identification of Property: Evidence: Admissibility of Parol Evidence. Where the description contained in the memoranda of purchase of property under a contract, falling within the Statute of Frauds, points to specific property, parol evidence is admissible to identify the property, the rule being that that is certain which is capable of being made certain.

8. CONTRACTS: Offer and Acceptance: Complying with Offer: Notice of Acceptance. Plaintiffs sold to defendant a carload of onion sets and drew a draft, with bill of lading attached, on the defendant through a bank in defendant's city. Upon arrival of the car defendant claimed the onions were in a damaged condition, but wired plaintiffs that they would be accepted if plaintiffs would authorize the bank to reduce the draft ten per cent. Plaintiffs wired the bank to reduce the draft ten per cent. *Held*, that this offer and compliance therewith made a complete agreement and did not require that plaintiffs give defendant notice of acceptance.

9. ———: ———: ———: ———: When Notice of Accept-
ance is not Required. There is a radical distinction in regard
to communications of acceptance between offers, which ask
that the offeree shall do something and offers which ask that
the offeree shall promise something. In the former case com-
munication of the acceptance is ordinarily not required, while
in the latter case communication of the acceptance is always
essential.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby*, Judge.

REVERSED AND REMANDED.

*A. W. Lyon* for appellant.

(1) The agreement is sufficient within the statute
of frauds if it appears by different memoranda, or
even if in a letter written by the party sought to be
charged and directed to a third party. Cunningham
v. Williams, 43 Mo. App. 629; Black & Snyder v. Crow-
ther, 74 Mo. App. 480; Grocer Co. v. Capen, 23 Mo.
App. 301; Peycke Bros. v. Aherns, 98 Mo. App. 456.
(2) The court will reach out and consider any and
all writings pertaining to the subject, such as a letter
written to a third party for the purpose of repudiat-
ing the contract, a pleading in some other cause, the
minutes of a town council or church society. Cash
v. Clark, 61 Mo. App. 636; Harrison v. Craven, 188
Mo. 609; Milling Co. v. Burher, 122 Mo. App. 19. (3)
Acceptance may be oral. Black & Snyder v. Crow-
ther, 74 Mo. App. 480. (4) Notification by phone
is sufficient where that method is the custom, which
method was the custom as shown by Keet's evidence.
Barnett & O'Neal v. Grain Co., 153 Mo. App. 463. (5)
The court will take into consideration the facts and
circumstances surrounding the transaction and within
the knowledge of the parties before and at the time of
the contract, to be supplied by parol, which would lead
to a certain identification thereof. Darnell v. Lafferty,
113 Mo. App. 305; Printing Co. v. Belcher, 127 Mo.
App. 133; Wilcox v. Sonka, 137 Mo. App. 54.

*V. O. Coltrane* for respondent.

(1) Plaintiff's rights are to be measured by the written contract, as modified by subsequent telegrams or by the correspondence subsequent to the written contract alone. Rucker v. Harrington, 52 Mo. App. 487; Wharton v. Foundry Co., 1 Mo. App. 582. (2) To make the proposal in Exhibit F a contract it should have been accepted, and notice of the acceptance given to defendant. Such notice was not given. Robinson v. Railroad, 75 Mo. 494; Neu v. Ins. Co., 131 Am. St. Rep. 245; Horton v. Ins. Co., 151 Mo. 604; Dalton. v. Terminal Co., 66 Mo. App. 271; Dalton v. Railroad, 113 Mo. App. 78; Mechem on Agency, secs. 725, 729; Anson on Contracts, p. 30; Patterson v. Campden, 25 Mo. 13; Morton v. Supreme Council, 100 Mo. App. 87; Raining v. Railway, 157 Mo. 477. (3) The agreement which plaintiffs undertake to show is within the Statute of Frauds and there is no sufficient note or memorandum in writing of the bargain signed by the defendant or its lawfully authorized agent. R. S. 1909, sec. 2784; Burdick on Sales (2 Ed.), sec. 66, p. 36; 1 Mechem on Sales, p. 355, sec. 426; p. 363, sec. 437; Scarritt v. Church, 7 Mo. App. 178; Schroeder v. Taafe, 11 Mo. App. 267; Boeckler v. McGowan, 12 Mo. App. 507; Riegart v. Coal & Coke Co., 217 Mo. 142; Mentz v. Newwitter, 19 Am. St. Rep. 514; Johnson v. Buck, 10 Am. Rep. 243; O'Donnell v. Lieman, 43 Me. 158; Benjamin on Sales (2 Ed.), sec. 211, p. 181; Whaley v. Hinchman, 22 Mo. App. 483; North v. Medil, 54 Am. Rep. 879; Johnson v. Fecht, 185 Mo. 335; Biest v. Shoe Co., 97 Mo. App. 137; Fox v. Courtney, 111 Mo. 147; 29 Am. & Eng. Ency. Law (2 Ed.), 866; Smith v. Shell, 82 Mo. 215; Christensen v. Wooley, 41 Mo. App. 56; Brookfield v. College, 139 Mo. App. 368; Rucker v. Harrington, 52 Mo. App. 494; Weil v. Willard, 55 Mo. App. 376; Mason v. Small, 130 Mo. App.

249; Kelly v. Thuey, 143 Mo. 436; Milling Co. v. Burgher, 122 Mo. App. 14; Boyd v. Paul, 125 Mo. 9; Hillman v. Allen, 145 Mo. 638.

NIXON, P. J.—This was an action for damages for the alleged breach of a contract in the sale of onion sets. The plaintiffs constitute a partnership firm engaged in growing and shipping onion sets from their place of business near the city of Chicage, Illinois. Defendant is a corporation engaged in the wholesale commission business in the city of Springfield, Missouri. In their petition plaintiffs state that on or about March 1, 1910, they entered into a written contract with the defendant whereby they sold to the defendant onion sets to the amount of 800 bushels, being a carload lot, of various kinds—afterwards changed to 708 bushels at the same price. The petition was in two counts, but at the conclusion of the evidence the plaintiffs elected to stand upon the second count. It is admitted that the onion sets were shipped from Chicago to Springfield and there tendered to the defendant, but the defendant failed and refused to accept them and pay for them. After they arrived in Springfield, defendant proposed to plaintiffs by telegram that it would accept the onion sets if the plaintiffs would authorize the bank to reduce the draft (which accompanied the bill of lading) ten per cent. The plaintiffs thereupon notified the Merchants' National Bank of Springfield, to which the bill of lading with draft attached had been sent, to reduce the draft ten per cent, and the bank immediately undertook to notify the defendant of such reduction; but the defendant still refused to accept or pay for the onion sets and plaintiffs claim they had to resell them in the open market at a loss, after taking off the ten per cent discount, and this action is for the amount of such loss. The defendant's answer was a general denial. At the conclusion of the plaintiffs' evidence, the

defendant offered a demurrer to the evidence which was sustained by the court. Plaintiffs took a nonsuit, and failing to plead further, final judgment was entered, from which they have appealed.

The respondent contends that the appellants took a voluntary nonsuit and hence were not entitled under the law to an appeal. The record shows the following recitals as to the nonsuit:

"Thereupon the defendant requested the court to give to the jury an instruction in the nature of a demurrer to the evidence, which instruction is in words and figures as follows, to-wit: 'The court instructs the jury that under the pleadings and evidence in this case, the plaintiffs are not entitled to recover on the second count.' To the giving of which instruction, the plaintiffs then and there at the time objected. Thereupon and notwithstanding plaintiffs' objection to the giving of said instruction, the same was given by the court to the jury, to which action of the court, the plaintiffs then and there at the time excepted. And thereupon and by reason of the giving of said instruction and the court's adverse ruling to plaintiffs upon the same, the plaintiffs were forced to take and did take an involuntary nonsuit, with leave to move to set the same aside, which said nonsuit and leave was granted by the court."

This record shows beyond question, as clearly as language could express it, that after defendant's demurrer to plaintiffs' evidence had been sustained by the court over the plaintiffs' objections and exceptions, the plaintiffs, by reason of the giving of said instruction and by reason of the court's adverse ruling against the plaintiffs upon the demurrer to the evidence, were forced to take and did take an involuntary nonsuit with leave to move to set the same aside. This case is to be distinguished clearly from those cases where the court has merely declared its intention to give an instruction in the nature of a de-

murrer to the evidence and before it is actually given the opposite party takes his nonsuit. This record shows that *after the demurrer had been sustained* the plaintiffs took an involuntary nonsuit. We think the record shows that the plaintiffs took the proper steps to preserve their right of appeal.

This is an action for breach of a contract of sale of goods, wares and merchandise, by the plaintiffs to the defendant, in which the purchase price was over thirty dollars. It is one of that class of contracts governed by the last clause of Sec. 2784, R. S. 1909, known as the Statute of Frauds, which section requires that "some note or memorandum in writing be made of the bargain, and signed by the parties to be charged with such contract."

The alleged contract is based upon two telegrams, the first of which is as follows: "Springfield, Mo., Mar. 2, 1910. Leesley Bros., Chicago, Ill. If you will authorize bank to reduce draft ten per cent will accept onions. Show that much soft rot. A. Rebori Fruit Co." Immediately on receipt of this telegram, plaintiffs went to the Fort Dearborn National Bank of Chicago and caused it to send the following telegram to the Merchants' National Bank of Springfield, Missouri: "Chicago, Ill., Mar. 3, 1910. Merchants' National Bank, Springfield, Mo. Reduce our draft No. 42345, Rebori Fruit Co., ten per cent on face of draft, our February 26th. Fort Dearborn National Bank."

It is apparent that this is a contract by offer of the defendant and acceptance by the plaintiffs in which the defendant promises to take the onions in consideration of the plaintiffs doing a certain act, namely, authorize the bank to reduce the draft ten per cent, which authorization plaintiffs immediately gave the bank.

The defense of the Statute of Frauds is available to the defendant under a general denial; and where the defendant denies as in this case the making of the

contract sued on, he may object that it is within the
Statute of Frauds, though he does not plead the
statute. [Hook v. Turner, 22 Mo. 333; Allen v. Rich-
ard, 83 Mo. 55; Boyd v. Paul, 125 Mo. 9, 28 S. W. 171;
Hillman v. Allen, 145 Mo. 638, 47 S. W. 509.]

The general rule is that contracts may be made by
telegram, or by mail and telegrams, and will constitute
a valid contract under the Statute of Frauds where the
minds of the parties met and the terms of the con-
tract were sufficiently definite and certain.

The respondent contends that the telegrams in
this case are insufficient memoranda of the bargain
and do not meet the requirements of the statute of
frauds because they are indefinite, uncertain and
ambiguous, and do not sufficiently identify the prop-
erty sold and the terms of the sale. The Statute of
Fraud requires that the writing containing the con-
tract should embody in itself all the essential elements
or terms of the contract, and that parol evidence is in-
admissible to piece out the contract, or modify, add to,
or subtract from, the essential elements of such con-
tract; that the written memorandum must be complete
within itself and be the sole repository of the essential
elements of the bargain. [Reigart v. Manufacturers
Coal and Coke Co., 217 Mo. 142, 117 S. W. 61.]

If, in this case, we are to be confined to the two
telegrams, it is evident that the contention of the re-
spondent would be unassailable. The two telegrams
considered by themselves are on their face so inde-
finite and uncertain that we could not determine
what onion sets were referred to or what draft was
alluded to. But the court is allowed to interpret the
memoranda (the two telegrams in this case) in the
light of all the circumstances under which the same
was made; and if, when the court is put into possession
of all the knowledge which the parties to the transac-
tion had at the time, it can be seen from the memoranda
who the parties to the contract were, what the subject

of the contract was, and what were its terms,—then the court should not hesitate to hold the memoranda sufficient. [Brewer v. Horst-Lachmund Co., 127 Cal. 643.]

The Statute of Frauds, however, does not require that the whole bargain or agreement between the parties should be contained in one writing, but where there are several writings, telegrams or letters, referring to and forming a part of the same subject-matter of the contract, all of them may be consulted and considered and construed together in ascertaining the terms of the contract. If the several writings, letters or telegrams, are signed by the parties themselves, they need not specifically refer to each other if by inspection and comparison of the writings themselves their connection with the same subject-matter is made sufficiently to appear. [Peycke Bros. v. Ahrens, 98 Mo. App. l. c. 459, 72 S. W. 151.] Though the written memorandum of the contract of sale is deficient in that it fails to state the price of the commodity sold, such deficiency may be cured by other writings referring to the same subject and which furnish the price. [Glasgow Milling Co. v. Burgher, 122 Mo. App. 14, 97 S. W. 950.] And it is not necessary that the writings, telegrams or letters, should show the time and place of delivery of the goods. [Great Western Printing Co. v. Belcher, 127 Mo. App. 133, 104 S. W. 694.]

One of the specific objections made to the memorandum of the contract in this case is the insufficiency of the telegrams in that the description of the subject-matter (the onions) fails to show what quantity of onions or what varieties of onions were the subject of their negotiations; that it might be 600 bushels or 800 bushels, or any other quantity so far as the writing shows. The subject-matter of a contract falling within the Statute of Frauds must be so described in the memorandum as to be capable of certain identifica-

tion. If, however, the description contained in the memorandum points to specific property, parol evidence is admissible to identify the property, the rule being that that is certain which is capable of being made certain. [20 Cyc. 270.] The question, however, as to how far parol evidence is admissible to render certain an indefinite contract made by telegraph need not be considered in this case as the negotiations were conducted by the parties by letters and telegrams. Taking all the writings, letters and telegrams concerning the onion sets, and considering and construing them together, substantially the following facts were in evidence at the time the defendant's demurrer to the evidence was sustained:

On the 26th day of March, 1909, the parties to this transaction entered into a written contract by which the plaintiffs agreed to sell and the defendant to purchase 800 bushels of onion sets, specifically described, at a price per bushel specifically named, for delivery in February, 1910, on the following terms and conditions: "Net cash, f. o. b. our warehouse, Hawthorne, Chicago. Packages charged for extra at cost. Delivery to be made as near specified date as weather will permit. Sets to be in good merchantable condition at time of shipment. To be screened through 1⅛ inch mesh sieve."

On February 15, 1910, the defendant made inquiry of the plaintiffs by telegraph: "Now many onion sets of each kind will you be able to ship us in our car? Please make an early reply." On February 17, 1910, the plaintiffs replied by letter, as follows: "Replying to yours of the 15th inst. we will ship about 365 reds, 52 white, and 165 yellow onion sets. Do not know exactly how many we will have, but expect to put in car about 600 bushels or more." On the 19th, the defendant replied by letter as follows: "If you can only ship 600 bushels this will not nearly make up a minimun car. At what price can you secure and include in the

car sufficient number of bushels of red globe onions of good stock to make up the minimun, red globe onions to be in even weight sacks and of good quality, as well as large size?" To this the plaintiffs replied on February 28th by letter, as follows: "Enclosed please find invoice to car of sets shipped you Feb. 25th. Car weighed about 1,000 lbs. over the minimum so we did not buy any red globe onions for you." At the same time the plaintiffs sent the defendant through the mail a duplicate bill of lading which was mailed to defendant at the time the draft was made out and delivered and is substantially as follows: "Chicago, Ill., Feb. 26, 1910. Sold to A. Rebori Fruit Co., Springfield, Mo.",—giving the number of bushels, kinds of onions, and price of each kind, total amounting to $999.50. At the time of shipment of the onion sets, the plaintiffs also sent a bill of lading with draft attached to the Merchants' National Bank of Springfield, which bill of lading recited that the Illinois Central Railroad Company received at Leesley Bros. switch, Harlem, Ill., Feb. 25, 1910, from Leesley Bros., consigned to Leesley Bros.—"Notify A. Rebori Fruit Co."—destination, Springfield, Mo., described as 354 bags of onions sets.

A member of the plaintiff firm testified that he sent the bill of lading with the draft attached (or had the Fort Dearborn National Bank of Chicago send it) to the Merchants' National Bank of Springfield, Mo., and that the onion sets were shipped in the usual way, that is, with sight draft with bill of lading attached. The draft referred to was as follows:

"No. 42345            Chicago, Feb. 26, 1910.

"On arrival of goods pay to the order of Fort Dearborn National Bank, $999.50, nine hundred and ninety-nine and 50-100 dollars, value received, and charge the same to account of Leesley Bros. To A. Rebori Fruit Co., Springfield, Mo."

The evidence showed that J. H. Keet was vice-president of the Merchants' National Bank of Springfield and that it was his duty to handle the draft department and the correspondence in connection therewith; that on or about the 1st day of March, 1910, he received the draft with bill of lading attached, on A. Rebori Fruit Company, from Leesley Bros., through the Fort Dearborn National Bank of Chicago, and immediately notified the A. Rebori Fruit Company.

The evidence of the plaintiffs tended to show that the prices of onion sets on the market at Springfield, Missouri, about the 1st of March, 1910, were lower than the contract price of the onion sets in question,— probably as much as fifteen or twenty per cent under the contract price, and that the market continued to decline with lower quotations from the 28th day of February till the 14th day of March, 1910.

On March 1, 1910, the defendant sent the plaintiffs the following telegram: "Onion sets show percentage soft and rot. What can you do?" To which the plaintiffs replied by telegraph as follows: "Onion sets left here O. K. Must be some mistake." And on March 2, 1910, the plaintiffs telegraphed the defendant as follows: "Take onions in and we will protect you." On the same day the plaintiffs received the following telegram from the defendant: "If you will authorize bank to reduce draft ten per cent will accept onions. Show that much soft rot." Upon receipt of this, the testimony shows that plaintiffs went to the Fort Dearborn National Bank which issued the draft and told them to notify the Merchants' National Bank at Springfield to reduce the draft ten per cent, and that bank on March 3, 1910, sent to the Merchants' National Bank the following telegram: "Reduce our draft No. 42345, Rebori Fruit Co., ten per cent on face of draft, our February 26th." The evidence of the plaintiffs shows that Mr. Keet received this telegram

and telephoned the A. Rebori Fruit Company and asked for Mr. Jonte, and on being told that Mr. Jonte was not there, he read the telegram to them and told them to be sure and tell Mr. Jonte, that it might be important to him, the necessary deduction of the draft. He further testified that some five days later Mr. Jonte called him by telephone and asked if he had received a telegram of that kind and was told that he had. That Mr. Jonte then asked why he hadn't been notified, and was told that the bank did so about a week before.

On March 9, 1910, the defendant sent the plaintiffs the following telegram: ''We only learned last evening that you authorized to reduce onion draft ten per cent. You failed to notify us accepting offer. We cannot handle account bad condition.''

The plaintiffs' evidence tended to show that the onion sets at the time they were shipped from Chicago were of the class and kind and in the condition required by the terms of the contract. Further, that upon the refusal of the defendant to take the onion sets, plaintiffs sold them and realized as the net proceeds of the sale the sum of $196.82.

Applying the rules hereinbefore stated which govern cases of this kind to the facts disclosed by the record, in the light of the circumstances surrounding the parties, we are of the opinion that the memorandum of the sale considered in connection with the letters and telegrams pertaining to the same subject-matter shows that the memorandum was in substantial compliance with the Statute of Frauds. To hold otherwise would certainly embarrass present business methods, and increase the expense, and impair the usefulness of the telegraph as a necessary instrumentality in modern commerce.

It is further contended by respondent that to make an offer or proposal (under the facts disclosed in this record), a contract, there must be an accept-

ance, and notice of the acceptance must be given; that as no notice was given by the plaintiffs in this case of their acceptance of the defendant's offer to receive and accept the onion sets if plaintiffs would reduce their draft ten per cent, the contract was not consummated. Ordinarily the communication of an intention to accept an offer is essential to an agreement. But there is a radical distinction in regard to communication of acceptance between offers which ask that the offeree shall do something and offers which ask that the offeree shall promise something. In offers of the former kind, communication of the acceptance is ordinarily not required; in offers of the latter kind, communication of the acceptance is always essential. [9 Cyc. 270.] In the case now under consideration, the offer to accept the onion sets was in consideration that the plaintiffs should do some act, that is, authorize the reduction of their draft ten per cent, which act was immediately consummated by notice to the Merchants' National Bank of Springfield to reduce the draft. The defendant's offer to accept the onion sets was unconditional and it sufficiently appears that no notice of the acceptance of such offer was expected or required and the plaintiffs' assent was given and communicated by its conduct which under the law was as binding as though made by words. Full performance of the consideration of an offer, before the offer is withdrawn, constitutes an acceptance of the offer. [Allen v. Chouteau, 102 Mo. l. c. 323, 14 S. W. 869; Niedermeyer v. Curators of State University, 61 Mo. App. l. c. 657.] Under the evidence in this case no written acceptance of defendant's offer to receive the onion sets was required. The circumstances surrounding the parties and property at the time negative such a conclusion. The defendant made its own terms and plaintiffs complied with them. This was sufficient.

For the reasons herein appearing, the judgment is reversed and the cause remanded. All concur.