## MERAMEC PORTLAND CEMENT AND MATERIAL COMPANY, Appellant, v. ROBERT KREIS.

**Division Two, July 14, 1914.**

**SPECIFIC PERFORMANCE: Parol Evidence: Statute of Frauds.** Specific performance is refused where there is no description, in letters and memoranda, to satisfy the Statute of Frauds, other than "land south of the Missouri Pacific Railroad tracks," and "forty-some-odd acres of bottom land you have adjoining us [plaintiff] at Sherman, Missouri." Parol evidence, when admitted to disclose the situation of the parties when the writings were made shows only that defendant did own land adjoining a tract of plaintiff's, but not necessarily situated at Sherman, and, even though the evidence had shown such location, it appears that defendant's tract contained 72.95 acres, and it would be impossible to ascertain from the memorandum what portion should be taken to compose the forty-odd acres mentioned.

Appeal from St. Louis County Circuit Court.—*Hon John W. McElhinney*, Judge.

AFFIRMED.

*Collins, Barker & Britton* and *C. K. Rowland* for appellant.

(1) The memorandum in this case is sufficient. Sec. 2783, R. S. 1909; 20 Cyc. 253; Springer v. Kleinsorge, 83 Mo. 157. (2) Memorandum of a contract of sale and conveyance of land, although signed only by the party to be charged when sufficiently clear and certain in its terms, affords a competent basis for a suit for specific performance. Mastin v. Grimes, 88 Mo. 478; Moore v. Thompson, 93 Mo. App. 348; Cable v. Jones, 179 Mo. 606; Real Estate Co. v. Spelbrink,

211 Mo. 671. · (3) While parol evidence is not admissible to piece out the memorandum, it is clearly admissible for the purpose of identifying the property described in the memorandum if reference is made to some "external standard," by which the property can be located. Darnell v. Lafferty, 113 Mo. App. 301; Sailor v. Gilfillan, 73 Mo. App. 152; Springer v. Kleinsorge, 83 Mo. 157; Smith v. Wilson, 160 Mo. 666; Bollinger County v. McDowell, 99 Mo. 637; Black v. Crowther, 74 Mo. App. 483; Tetherow v. Anderson, 83 Mo. 97; Cravens v. Pettit, 16 Mo. 210. (4) Where the memorandum is sufficient to meet the requirements of the Statute of Frauds, the acceptance may be oral. Waterman Spec. Perf., sec. 137; Gradle v. Warner, 140 Ill. 123; Brown Stats. Frauds, sec. 345a; Farwell v. Lowther, 18 Ill. 252; Black v. Crowther, 74 Mo. App. 480. (5) It is not necessary that the memorandum upon which a party may be charged shall be a single document. Such memorandum may be made up of a number of different papers, such as letters, etc., where there is a sufficient reference made to identify and connect them, and one or more of them is signed by the party to be charged. Peycke Bros. v. Ahrens, 96 Mo. App. 456; Cunningham v. Williams, 43 Mo. App. 629; Moore v. Mountcastle, 61 Mo. 424; Gurley-Burnham Co. v. Capen, 23 Mo. App. 301; Heideman v. Wolfstein, 12 Mo. App. 366; Swallow v. Strong, 85 N. W. (Minn.) 942; Charlton v. Real Estate Co., 69 L. R. A. (N. J. Eq.) 394. (6) Even where the memorandum attempts to make time of the essence of the contract, by fixing a definite date for the acceptance of the offer, if the parties continue to deal together after the expiration of the time fixed, this amounts to a waiver of the element of time. 1 Story Eq. Jur., sec. 776; Mastin v. Grimes, 88 Mo. 485; Melton v. Smith, 65 Mo. 322; Mix v. Baldac, 78 Ill. 217.

261Mo11

*George M. Block* and *Frank B. Coleman* for respondent.

The memorandum in this case is not a sufficient compliance with the Statute of Frauds to constitute a binding contract between appellant and respondent or entitle appellant to any relief. (1) Because there was no sufficient description of the premises sought to be purchased. Sec. 2783, R. S. 1909; Fox v. Courtney, 111 Mo. 147; King v. Wood, 7 Mo. 389; Whaley v. Hinchman, 22 Mo. App. 483; Schroeder v. Taaffe, 11 Mo. App. 267; Weil v. Willard, 55 Mo. App. 376; Johnson v. Fecht, 94 Mo. App. 605; Johnson v. Fecht, 185 Mo. 335. (2) Because there is no sufficient description of the purchaser. Rucker v. Harrington, 52 Mo. App. 481; Toms v. Bayse, 65 Mo. App. 30; Carrick v. Mincke, 60 Mo. App. 140. (3) Because there is no sufficient certainty as to the terms of the alleged contract. Kelly v. Thuey, 143 Mo. 435; Ringer v. Holtzclaw, 112 Mo. 522; Wendover v. Baker, 121 Mo. 290; Ice Co. v. Heinze, 102 Mo. 245; Mastin v. Hally, 61 Mo. 196; Taylor v. Williams, 45 Mo. 80; Boyd v. Paul, 125 Mo. 14. (4) Because the memorandum being scant in measure under the Statute of Frauds it cannot be pieced out by verbal additions. Boyd v. Paul, 125 Mo. 14; Ringer v. Holtzclaw, 112 Mo. 519; Kelly v. Thuey, 143 Mo. 422; Reigert v. Coal & Coke Co., 217 Mo. 160.

WILLIAMS, C.—Plaintiff corporation, by action for specific performance, seeks to compel defendant to convey to it a tract of land situated in St. Louis county, Missouri, described as follows:

**Specific Performance: Parol Evidence.**

"Part of the southwest quarter of section 15 and of the northwest quarter of section 22 in township 44 north of range 4 east, containing 39 acres more or less, and being particularly bounded and de-

scribed as follows, to-wit: Commencing at the point where the south boundary line of the present right of way of the Missouri Pacific Railroad intersects the east boundary line of the southwest quarter of section 15 aforesaid, and running thence in a westwardly direction with the south boundary line of said right of way to the intersection thereof with the west boundary line of 'Castle Woods' subdivision, as per plat thereof recorded in a plat book No. 9, at page 24, in the recorder's office of the city of St. Louis; thence running south with the west boundary line of said Castle Woods to the middle of the main channel of the Meramec River; thence down the middle of the main channel of said stream, with the meanders thereof, to the east boundary line of the southwest quarter of said section 15, and thence north with the east boundary of said southwest quarter of said section 15 to the place of beginning; bounded on the north by the south line of the present right of way of the Missouri Pacific Railroad, on the south by the middle of the channel of the Meramec River; on the east by the east line of the southwest quarter of section 15 aforesaid, and on the west by the west line of the subdivision known as 'Castle Woods' as per plat thereof recorded as aforesaid.''

On May 31, 1908, defendant delivered to one Lewis (who was then in the employ of the plaintiff), the following unsigned paper:

''No. 1, $6000 (six thousand) with land south of Miss. Pac. R. R. tracks, fishing rights for Clubhouses members and Oil & Gas rights reserved, also piping water over land.

''No. 2, $5000 (five thousand) for bar and track purpose, without any land.

''No. 3, $3000 (three thousand) for privilege of letting Comp. Plant on my place & for running tracks over my land for 15 (fifteen) years after 15 years Comp. has to pay me $250 (two hundred & fifty) doll.

a year annually in advance. I reserve the Right to ship Sand, Gravel & Wood over these & Comp. tracks on Frisco R. Road, if bridge is build, if not on Miss. Pac. R. Road. I to pay 25 cents to Comp for each loaded car.

"No. 4, 50 Cents (fifty) Royalty for each Car of Sand & Gravel, $3000 (three thousand) Cash, which is to be repaid to Comp. from Royalties, I to get 25c./ for each Car and 25c./ to be kept back untill the $3000 are repaid, Then Comp. has to pay me 50 cents, A way to be devised to keep exact Count of each car load taken out.

"These offers to be good only for six (6) days untill 6th of June, 1908.

"St. Louis, May 31, 1908."

Said Lewis delivered this paper to Mr. Boyd, the vice-president and general manager of plaintiff company. On June 2, said Boyd wrote to defendant the following letter:

"Meramec Portland Cement & Material Co.
                St. Louis, Mo., June 2, 1908.
Mr. Robert W. Kreis,
    Jennings, Missouri.
Dear Sir:

Please call at the office at your earliest possible convenience to talk over the matter of purchasing the forty-some-odd acres of bottom land you have adjoining us at Sherman, Missouri.

Please advise me, as soon as possible, when we may expect you, and oblige,
                    Yours very truly,
                        T. P. BOYD,
                        Vice-Pres. & Gen'l Mgr."

On June 3, defendant wrote to said Boyd in answer to the above letter as follows:

"Jennings, June 3, 1908.

Mr. Frank P. Boyd,

·St. Louis, Mo.

Dear Sir:

Received your letter dat. June 2. I am unable to see you, as our Works are going to close down for 10 days for repair, commencing next Monday and we have to work overtime to finish by Saturday eve. I have given Mr. Lewis the 4 diff. propositions that I would accept last Sunday and told him, that they were good untill Sat. June 6th after which time I would turn the business over to Lawyer Mr. Block & Comp. in the Carrolton Bldg, Mr. Block wanted to take it right away, but I did not like to do it untill I heard from your Comp. It does not cost me anything, as they will handle it on a Commission of what they get over $5000. I will under the circumstances extend the time untill Monday eve, June 8th, but in the meantime let me know, which proposition you will accept. As there is no use to argue any points or price, as I have set them down and intend to stick to them. If you come to any conclusion let me known and I will come Monday with my Lawyer and fix it up. If any one of your Comp. want to see me, you can find me at M. A. Seed Dry Plate Works, Woodland, Mo., on the Wabash R. R. between 12 and 1 o'clock. I think it is unnecessary to mention that it will be to your Comp. benefit to have it settled on or before June 8, 1908.

I remain

Resp. yours, ROBT. KREIS."

On June 2, defendant wrote to said Lewis the following postal card.

"St. Louis, June 2, 1908.

Mr. W. J. Lewis,

St. Louis, Mo.

Dear Sir:

I hardly think it necessary to see you as you have the propositions to submit to the Comp. I am posi-

tive the Comp. knows all about it. If they are smart they will loose no time to write me about the offers which I numbered, as Saturday is the last day & after that I have nothing to do with it any more.

truly yours,

ROBT. KREIS.''

On June 10, defendant wrote to said Lewis the following postal card:

''St. Louis, June 10, 1908.

Mr. W. J. Lewis,
    St. Louis, Mo.
Dear Sir:

Please do not wait for me as I have disposed of my property South of R. R. Tracks. I remain,

Resp. yours,

ROBT. KREIS.''

Said postal card was addressed to ''Mr. W. J. Lewis Meramec Portland Cement & Mat. Co., 507 Nat. Bank of Com. Bldg., St. Louis, Mo.''

The above letters and papers constitute all of the written memoranda concerning the transaction. At the instigation of Mr. Boyd, a Mr. Terpening, who was at that time one of the directors in the plaintiff company, arranged for a meeting with defendant at the Southern Hotel in St. Louis on Saturday evening, June 6th. The defendant and his brother came to the hotel and there met Mr. Terpening. After the parties had been in consultation some considerable time, Mr. Boyd joined the meeting. At this meeting Mr. Terpening made several offers to the defendant for his property, but it appears that all of these offers were less than six thousand dollars. Both Mr. Boyd and Mr. Terpening urged defendant's brother to use his influence to cause defendant to accept the propositions there made by Mr. Terpening. The parties were unable to cause defendant to accept the propositions there made by Mr. Terpening and Mr. Terpening told

defendant to "take his land and go." Mr. Boyd testified that had Mr. Terpening been able to purchase the land from the defendant on that night that the purchase would have been made for the plaintiff company. Mr. Boyd further testified that he attempted to get in communication with defendant on June 8 by telephone; that he called up the Seed Dry Plate Company and inquired for defendant at three different times on June 8 but was told that defendant was not there. It does not appear from the evidence for what purpose Mr. Boyd desired to communicate with defendant or what information he desired to convey to him over the telephone. Witness Brown testified for plaintiff that on June 9, defendant came down to the river where witness was fishing and that another gentleman was also present and that defendant said: "I seen Captain Lewis on the train, and he asked if he could reach me today by a letter or anything, and he said, 'I told him yes.' They were looking for me yesterday, but I instructed my wife not to answer any telephone or anything, and they asked me this morning why I didn't come down to the office yesterday, and I said I have fooled with you enough and I won't fool with you any more; that is the reason I didn't come down."

This witness further testified: "And we stood and talked awhile and went back over his land and up to his house. Then I came back down to the river again and right away after dinner Mr. Lewis came and this man said, 'How would your wife reach you with a letter or any way?' He says, 'Well, I have got that fixed, if there is anything turns up he can't find me.'" That thereupon defendant and Mr. Lewis went away together, talking. Witness Lewis testified that on June 9 he went with the defendant out to the land and witness asked defendant if that was the land he proposed to sell for six thousand dollars and the defendant said it was and thereupon witness told

defendant that he would accept the offer. That witness wanted defendant to go to the office that night so that witness could pay defendant one hundred dollars but defendant refused to accept one hundred dollars down and wanted five hundred dollars down. The witness then wrote on a card his understanding of the agreement and read it to the defendant and asked him if that was what he understood; but that the defendant said: "That isn't necessary; I will be at the office of the Meramec Portland Cement & Material Company at two o'clock to meet you." Witness further testified that defendant failed to keep his agreement to meet him at two o'clock on the following day and that he waited for the defendant at the office until after five o'clock. Witness further testified that he was acting for the plaintiff company on June 9 but that he told defendant he was accepting the offer personally. On June 11, witness received from defendant a postal card stating that defendant had disposed of the property. On June 11, Mr. Boyd, acting for the plaintiff company, after learning that defendant had disposed of the property, in company with another officer of the company, tendered defendant six thousand dollars in currency; that at the time the tender was made the representatives of the plaintiff told defendant that the tender was made "in payment of the thirty-nine acres of your land at Sherman, Missouri." That defendant refused to accept the tender, saying: "I can't take it." The evidence on the part of plaintiff further tended to show that defendant did not own any land south of the Missouri Pacific tracks in St. Louis county other than the land in question in this suit and that there were seventy-two acres in the tract, and that this tract adjoined that of plaintiff's but the location of plaintiff's said tract does not appear from the evidence. The court found the issues in favor of defendant and

dismissed plaintiff's petition. Thereupon plaintiff duly perfected his appeal to this court.

It is first contended by appellant that the foregoing letters, together with the unsigned paper of May 31, were sufficient to satisfy the requirements of section 2783, Revised Statutes 1909, the section of the Statute of Frauds applicable to transactions of this character, and that therefore a sufficient foundation exists upon which to base its action for specific performance.

We are unable to agreed with this contention. It will be noticed that the only written words which in any manner throw light upon the description of the property sought to be affected are the words, "land south of the Miss. Pac. R. R. tracks," contained in the unsigned paper of May 31, and the words, "forty-some-odd acres of bottom land you have adjoining us at Sherman, Missouri," contained in the letter of plaintiff's vice-president to defendant under date of June 2d.

In the case of Fox v. Courtney, 111 Mo. 147, the land was described as the "ground lying between Missouri avenue and Sixth street on the east side of Grand avenue," and it was held that the description was not sufficiently certain to satisfy the Statute of Frauds. In that case the court quoted with approval the following rule: "The writing required by the statute 'must contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties.' . . . 'The writing must be a guide to find the land, must contain sufficient particulars to point out and distinguish the tract from any other.'" [Id., l. c. 150.]

The rule that parol evidence is not admissible to supply omitted parts of the memorandum or contract coming within the scope of the Statute of Frauds is

correctly stated and fully discussed in the case of Reigart v. Coal & Coke Co., 217 Mo. 142.

The rule here applicable is also stated in Pomeroy on Specific Performance of Contracts (2 Ed), par. 90, as follows:

"The subject-matter of the agreement must all be included in the memorandum, and must be described with sufficient exactness to render its identity certain upon the introduction of extrinsic evidence simply disclosing the situation of the parties at, and immediately before, the time of making the contract. Parol evidence is admissible to show the surrounding circumstances and position of the parties, and thus to explain the meaning and application of the descriptive language, and thereby to identify the subject-matter; and all technical terms and other phrases used in a special sense, may be thus, as it were, translated. But if, by this means, the subject-matter is not certainly ascertained, parol evidence cannot be used to go farther and actually supply a substantive part of the agreement, which has been entirely omitted from the memorandum or insufficiently expressed. . . . [or] The description of the subject-matter may be wholly or partially contained in an auxiliary writing, which, if referred to in such a manner as to establish the connection, becomes a constituent part of the memorandum."

Allowing appellant the full benefit of the above rule, we find that the parol evidence disclosing the situation of the parties at the time the memorandum was made shows that defendant did own a tract of land which adjoined a tract owned by plaintiff company but whether or not this tract belonging to plaintiff was located at Sherman, Missouri, the evidence does not disclose. And furthermore, even if the evidence had so shown, the description of the land sought to be affected would still remain indefinite and uncertain for the reason that the evidence shows that

defendant's said tract contained 72.95 acres and it would be impossible to ascertain from the memorandum what portion of the above tract should be taken to compose the "forty odd acres" therein mentioned.

Several other points, some of which appear to be based upon substantial ground, are suggested by respondent in justification of the decree, but since the conclusion reached on the point above discussed is decisive of the case, it becomes unnecessary to give further consideration to points which also may have justified the action of the trial court in finding the issues for defendant.

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.