PIERSON- LATHROP GRAIN COMPANY, a Corporation, Respondent, v. THE POTTER LUMBER, GRAIN AND HARDWARE COMPANY, a Corporation, Appellant.

Springfield Court of Appeals, March 11, 1922.

1. **FRAUDS, STATUTE OF**: Writing Must Contain All Terms, or Refer to Writing Containing Them, and Correspondence May Show Contract, if Essential Terms Ascertainable When All Read Together. To bind a party to a contract for the sale of goods by a writing . complying with the statute, the writing signed by him must contain the terms of the contract, or must refer to some other

writing from which the terms may be ascertained without oral testimony, and a contract may be shown by correspondence if, when all the written communications between the parties are read together, the essential terms of the contract can not be ascertained with reasonable certainty.

2. ———: **Letters of Buyer, After Last Letter of Seller not Calling for Reply, Held not Part of Writing.** Where the last letter written by seller contained no proposition or offer to sell calling for a reply by buyer, letters subsequently written by buyer to seller cannot be considered in determining whether the correspondence sufficiently contains the terms of the contract complying with the statute.

3. ———: **Letter by Seller Held not to Refer to Letters of Buyer Confirming Oral Purchase, so That the Letters did not Comply with Statute.** Where an agreement for the sale of corn by defendant to plaintiff was first made by telephone, and subsequent thereto plaintiff wrote to defendant letters confirming its purchase, and requesting deposit of margin, and thereafter drew on defendant. for the margin, and sent a draft with a letter stating it was drawn in accordance with plaintiff's custom, and not that it was drawn in accordance with the agreement between the parties, a letter by defendant refusing to pay the draft but stating that plaintiff had bought the corn, and would get it, manifestly referred to the oral agreement, which defendant contended did not provide a deposit of a margin, and not to contract as stated in the letters of confirmation, so that the letters were insufficient to comply with the statute.

4. ———: **Letter by Seller Held not Acceptance of Contract in Letters of Confirmation by Buyer.** Where the buyer of corn sent to seller letters confirming the agreement by telephone, which provided the seller should deposit a margin, a subsequent letter by the seller refusing to pay the draft for the margin, but stating the buyer had bought the corn, was insufficient to comply with the Statute of Frauds, even if it referred to the letters of confirmation, since it did not accept the terms therein contained concerning the margin.

Appeal from Jasper County Circuit Court.—*Hon. Grant Emerson,* Judge.

REVERSED.

*Martin & Martin* for appellant.

(1) The letter of October 24, 1917, Exhibit "F" is the only writing signed by the party to be charged. This

letter is not an acceptance of the terms of the written confirmation contracts signed by the plaintiff, Exhibits "B" and "D," as it in no way refers to such confirmation contracts so that the same may be identified from the writing resort to parol evidence. Marshall-Hall Gr. Co. v. Merc. Co., 203 Mo. App. 220; Hain v. Burton, 118 Mo. App. 584; Schoeder v. Toafe, 11 Mo. App. 268; Fowler Elev. Co. v. Cotterell, 38 Neb. 512, 57 N. W. 19. (2) It is clear that the letter written by Potter, Exhibit "F," does not refer to the written confirmation contracts, Exhibits "B" and "D" and if it refers to the oral conversation had over the phone, it does not satisfy the Statute of Frauds, in that the terms of the contract are not expressed in writing, with reasonable certainty, so that its essential terms can be ascertained from the writing itself without resort to parol. Marshall-Hall Grain Co. v. Mercantile Co., 203 Mo. App. 220, l. c. 225; Meramec Portland C. & M. Co. v. Kreis, 261 Mo. 160, l. c. 169; Arky v. Commission Co., 185 Mo. App. 241, l. c. 248; Carter v. Timber Co., 184 Mo. App. 523, l. c. 528; Durham v. Hartman, 153 Mo. 625, l. c. 629; Ringer v. Holzclaw, 112 Mo. 519, l. c. 522. (3) If it can be said that the defendant undertook to be bound by any sort of contract, or that there was ever a meeting of the minds of the parties, it was in an agreement that was not to be margined and one conditioned on defendant's ability to get cars, and not the contract pleaded, or the one attempted to be proved, and according to the proof if there was any meeting of the minds of the parties it was in the oral conversation had after the receipt of Potter's letter Exhibit "F," by the plaintiff, and under the Statute of Frauds no part of the contract can rest in parol, or be modified by parol. Reigart v. Coal Co., 217 Mo. 142, l. c. 166; Warren v. Mayer Mfg. Co., 161 Mo. 112, l. c. 122; Allen West Com. Co. v. Richter, 228 S. W. 827, l. c. 830; Moran v. Thurman Davis Gr. Co., 226 S. W. 84; Fuller v. Presnell, 233 S. W. 502, l. c. 505; Last Chance Min. Co. v. Tuckahoe Min. Co., 202 S. W. 287; Ringer v. Holzclaw, 112 Mo. 519, l. c. 522-23; Boyd

v. Paul, 125 Mo. 9, l. c. 14; Ruck v. Harrington, 52 Mo. App. 481, l. c. 488. (4) It is well settled that if, after a contract is made, it is modified by a subsequent agreement, the contract as modified must be declared on before a recovery can be had. Gifford v. Williams, 187 Mo. App. 29, l. c. 38. There is no writing introduced in evidence which confirms or accedes to the conditions contained in the letter of Potter, Exhibit "F," and hence the plaintiff's evidence fails to satisfy the Statute of Frauds. Eastern State Ref. Co. v. Teasdale & Co., 211 S. W. 693, l. c. 695. (5) Secondary evidence of these instruments was not admissible for the reason that the testimony did not show that they were properly prepared for mailing, that is, stamped and addressed. Bless v. Jenkins, 129 Mo. 647, l. c. 660; Welsh v. Chicago Guaranty Fund Life Soc., 81 Mo. App. 30, l. c. 36; Best v. Insurance Co., 68 Mo. App. 598, l. c. 602; State v. Grinter, 134 Mo. 512; Kvale v. Keane, 39 N. D. 560, 168 N. W. 74, 9 A. L. R. 972.

*Kenneth W. Tapp* and *Wesley Halliburton* for respondent.

(1) The correspondence is sufficient to satisfy the Statute of Frauds. Pierson-Lathrop Grain Co. v. Barker, 223 S. W. 941; Carter v. Timber Co., 184 Mo. App. 529; Peycke Bros. v. Ahrens, 98 Mo. App. 456; Truskett v. Commission Co., 180 S. W. 1048; Leesley Bros. v. Fruit Co., 162 Mo. App. 195; Riddle v. Castner, 209 S. W. 127; Marshall-Hall Gr. Co. v. Boyce Merc. Co., 211 S. W. 725; Heideman v. Wolfstein, 12 Mo. App. 366; Cunningham v. Williams, 43 Mo. App. 629; Northup v. Colter, 150 Mo. App. 639; 20 Cyc. 278; Kelly v. Thuey, 143 Mo. 422; Smith v. Shell, 82 Mo. 215; Reigart v. Coal Co., 217 Mo. 142; Brimm v. Alexander, 185 Mo. App. 599; Black v. Crowther, 74 Mo. App. 480; Grocer Co. v. Capen, 23 Mo. App. 301; Moore v. Mountcastle, 61 Mo. 424; Meek v. Hurst, 191 Mo. 68. (2) The oral evidence showing the surrounding circumstances and the

application of the memorandum to the contracts was clearly admissible. Carter v. Timber Co., 184 Mo. App. 529; Leesley Bros. v. Fruit Co., 162 Mo. App. 195; Darnell v. Lafferty, 113 Mo. App. 282; Russell v. Berkstresser, 77 Mo. 417. (3) There was no modification of the contract merely because plaintiff waived a requirement which it was duty of defendant to comply with, and which was to defendant's advantage. 13 Corpus Juris. 670 (sec. 764); 13 Corpus Juris. 673. (4) The letter refers to the confirmations and not to the oral conversations. Peirson-Lathrop v. Barker, 223 S. W. 941. (5) The letter contained merely an excuse for a possible future failure to ship, and was not a conditional acceptance or a modification. Pierson-Lathrop v. Barker, 223 S. W. 941; Tradewater v. Lee, 68 S. W. 400; Hesser v. Fuel Co., 90 N. W. 1094; 2 Wharton Law of Evidence (3rd Ed.), sec. 872. (6) The carbon copies are regarded as originals, and may be introduced in evidence, even though the typewritten originals are not accounted for. Hay v. American Clay Co., 179 Mo. App. 567; Wright v. Railroad, 118 Mo. App. 392; Bond v. Sandford, 134 Mo. App. 477. (7) The evidence as to mailing was sufficient. Peirson-Lathrop Gr. Co. v. Barker, 223 S. W. 941; Ward v. Transfer Co., 119 Mo. App. 83; Hastings v. Life Insurance Co., 138 N. Y. 473, 34 N. E. 289; Lawrence Bank v. Raney Co., 26 Atl. 119; Matter of Wiltse, 25 N. Y. Sup. 733; 16 Cyc. 1068. (8) The verdict is proper, and the amount cannot be questioned. Smart v. K. C., 194 Mo. 513; Farrell v. Transit Co., 103 Mo. App. 454; R. S. 1919, secs. 1550, 1276, 1513. (9) The proper measure of damages was used, and the instructions are proper. National Warehouse v. Toomey, 144 Mo. App. 516; Peirson-Lathrop v. Barker, 223 S. W. 941; Peirson-Lathrop v. Britton, 189 S. W. 584.

COX, P. J.—Action for damages for breach of contract to sell 10,000 bushels of corn. Trial by jury; verdict and judgment for plaintiff and defendant has appealed.

The plaintiff claimed to have purchased 10,000

bushels of corn from defendant and that defendant had refused to deliver it. The value of the corn was in excess of $30 and the contract is therefore within the Statute of Frauds and this statute was pleaded as a defense. The deal being in conversation over the telephone and it is claimed by plaintiff was consummated by the exchange of letters.

On October 12, 1917, the plaintiff, whose place of business was at Kansas City, Missouri, wrote defendant at Iantha, Missouri, a letter confirming the oral contract previously made by phone for the purchase of 5,000 bushels of corn. The material parts of this letter are as follows: "We confirm purchase of you per phone 11 a. m. of car 5,000 bushels corn No. 3 or better @ 1.14½ basis f. o. b. Iantha, Missouri. . . . if December shipment 2 cents less, 5 cents per bushel margin to be deposited with us and kept good to the market . . . if shipment not made in time specified our option to accept, reject, extend time or buy in for shippers account."

On October 15, 1917 a similar letter except as to price and time of shipment, which was for December, confirming purchase of 5,000 bushels of corn was written to defendant by plaintiff.

Up to October 23rd, no reply had been received by plaintiff to either of these letters and on that day plaintiff wrote defendant the following letter: "We have drawn draft on you today for $500 margin on 10,000 bushels of corn which we have purchased from you on deferred shipment. It is usual to require a margin on trades made for deferred shipment and is one of our rules. We trust you will take up this draft promptly on arrival and pay it."

On October 24, 1917, Mr. Potter wrote plaintiff for defendant as follows: "We have your letter addressed to the Farmers Grain & Implement Company of Iantha, Missouri, and note you have made draft for $500. We do not expect to margin this contract or any other contract that we make outside of buying options. You are

buying corn from us and if we get the cars, you will get the corn.'' Plaintiff did not reply to this letter and there was no other correspondence until November 20, 1917, when plaintiff wrote defendant as follows: ''Under date of October 12th, we purchased five thousand bushels of No. 3 corn for November shipment. Kindly bill this grain to us at Kansas City, Missouri.''

On November 23rd, plaintiff again wrote to defendant asking when the corn bought October 12th would be shipped. On December 5th, plaintiff wrote to defendant asking when it might expect shipment of the 10,000 bushels. On December 17th, plaintiff again wrote defendant and in that letter set out the terms of the agreement of both purchases aggregating 10,000 bushels but made no reference to a deposit for margin and quoted therein a part of defendant's letter of October 24th in which defendant had stated: ''We do not expect to margin this contract or any other contract we make outside of buying options. You are buying corn from us and if we get the cars, you will get the corn'' and suggested that defendant could, if he wished, wait until December 31st, and then plaintiff could buy other grain to replace that bought from defendant and they could settle on payment of the difference. On December 20th, plaintiff wrote that if defendant could not secure cars to ship to Kansas City, Missouri, shipment could be made to plaintiff at Ft. Worth, Texas. On January 5, 1918, plaintiff wrote defendant that it would extend the time to January 10th and unless defendant should be heard from by that date, plaintiff would buy grain and take steps to collect the difference in cost from defendant. Defendant did not answer any of these letters that were written by plaintiff after October 24, 1917. The only letter written by plaintiff was the one of that date above set out. After January 10, 1918, plaintiff drew on defendant for $4380 which defendant refused to pay and this suit followed.

We have set out the material parts of all the letters that passed between the parties for it is from these letters

that the question of a contract in writing to comply with the Statute of Frauds must be determined. To bind a party by a writing signed by him the writing must contain the terms of the contract or must refer to some other writing from which the terms of the contract may be ascertained without the aid of oral testimony. A contract may be shown by letters or telegrams and if, when all the written communications between the parties are read together without the aid of oral testimony, except such as may be pertinent to show the situation of the parties and the circumstances surrounding the transaction, the essential terms of the contract can be ascertained with reasonable certainty, it is sufficient. [Young Men's Christian Association of Kansas City v. Dubach, 82 Mo. 475; Fox v. Courtney, 111 Mo. 147, 20 S. W. 20; Dunham v. Hartman, 153 Mo. 625, 629, 55 S. W. 233; Meramec Cement & Material Co. v. Kreis, 261 Mo. 160, 169, 168 S. W. 1148; Peycke Bros. v. Ahrens, 98 Mo. App. 456, 72 S. W. 151; Leesley Bros. v. A. Rebori Fruit Co., 162 Mo. App. 195, 144 S. W. 138; Truskett v. Rice Bros. Live Stock Commission Co., 180 S. W. 1048.]

The converse of that proposition necessarily follows and unless the letters or other writings do either expressly or impliedly so refer to each other as to show that they are to be considered together and then when so considered, a contract is shown and its terms stated with reasonable certainty, the statute is not complied with.

The petition was in two counts based on the two separate purchases of grain. The facts relating to each were the same except the dates and prices. On October 12, 1917, a conversation over the telephone resulted in an agreement by which plaintiff purchased from defendant 5,000 bushels of corn. The parties to this conversation, Mr. Sullivan for plaintiff and Mr. Potter for defendant, disagreed in their testimony as to the terms of the contract as orally agreed upon over the phone—another illustration of the necessity for, and wisdom of, the statute. This conversation, of course, was not binding and on the

same day plaintiff wrote defendant a letter confirming the purchase and giving the terms. This provided for a cash deposit by defendant with plaintiff of 5¢ per bushel as follows: "5¢ per bushel margin to be deposited with us and kept good to the market." On October 15th another telephone conversation took place between the same parties followed by a letter of the same date confirming that purchase and contained the same provision for 5¢ per bushel margin to be deposited with plaintiff by defendant. Neither of these letters were answered and on October 23rd, plaintiff wrote defendant: "We have drawn draft on you today for $500 margin on 10,000 bushels of corn which we have purchased from you on deferred shipment. It is usual to require a margin on trades made for deferred shipment and it is one of our rules." Mr. Potter was an officer in the bank to which the draft was sent and also an officer in, and manager of, defendant company. He sent the draft back and then wrote the letter of October 24th.

We think the letters of plaintiff to defendant of October 12th and 15th confirming the oral contracts of purchase, the letter of October 23rd in relation to the draft and the letter of defendant to plaintiff of October 24th are the only letters that can be considered in determining whether the requirements of the Statute of Frauds were met in this case. The letters written by plaintiff after October 24th were not replied to by defendant. The only letter written by defendant was dated October 24th and contained no proposition or offer to sell of any kind and hence the letters written afterward by plaintiff to which defendant did not reply cannot be construed to relate back to defendant's letter of October 24th and give to it a meaning that did not appear without them. [Western States Refrigerating Company v. J. W. Teasdale & Company, 211 S. W. 693.]

Eliminating all the letters after October 24th, we have left only the letters of plaintiff to defendant of October 12th and 15th confirming the oral agreements, the letter of October 23rd in relation to the draft and

defendant's letter of October 24th. It is contended by plaintiff that defendant's letter of October 24th impliedly referred to plaintiff's letters of the 12th and 15th and that the statement of defendant in that letter, "You are buying corn from us and if we get the cars, you will get the corn" was an acknowledgment in writing on defendant's part that it had sold to plaintiff the corn mentioned in the letters of the 12th and 15th on the terms therein stated. We do not think so. This letter of the 24th shows on its face that it was written in answer to plaintiff's letter of the 23rd. Plaintiff had written on the 23rd informing defendant that a draft for $500 had been drawn on defendant to cover 5¢ per bushel on the 10,000 bushels of corn purchased and instead of stating, as it ought to have done, that it was in compliance with their letters of confirmation of the 12th and 15th, it stated: "It is usual to require a margin on trades made for deferred shipment and is one of our rules." Plaintiff was asking a deposit of the 5¢ margin, as it stated, according to the usual custom and its own rules—not according to its contract with defendant as shown by its letters of confirmation of the 12th and 15th. Since plaintiff did not refer to its letters of the 12th and 15th in its letter of the 23rd to which defendant replied on the 24th, it would be most unreasonable to say that defendant's letter without any direct reference to the letters of the 12th and 15th had implied referred to them and that defendant meant by its letter of the 24th to accept in writing the terms stated in the letters of the 12th and 15th. We do not think this letter, which shows on its face that it was written in reply to plaintiff's letter of the 23rd, can possibly be construed to refer to the letters of plaintiff of the 12th and 15th. The statement "You are buying corn from us" must have refered to the oral contract as Potter understood it and not the contract as stated in plaintiff's letters.

But if we say that this letter did refer to the letters of the 12th and 15th, there is still no contract, for defendant refused to pay the margin of 5¢ per bushel pro-

vided for in those letters and by doing so refused to be bound by the terms stated in them and the statement "You are buying corn from us" could only refer to the oral agreement which Mr. Potter claimed did not provide for the deposit of any margin and was conditioned on defendant being able to get cars in which to ship the corn. In other words, the language "You are buying corn from us" could only mean that you are buying corn from us but not on the terms stated in your letters of the 12th and 15th. The construction that defendant did not intend to be bound by the letters of plaintiff on these dates is strengthened by the fact that those letters were not answered in due course. The letter of the 23rd was answered immediately and, had plaintiff not drawn on defendant for $500 as margin, it is not probable that any letter would have been written by defendant at all.

Plaintiff relies strongly upon Pierson-Lathrop Grain Co. v. Barker, 223 S. W. 941, which in some respect was similar to this case but we think there is a clear distinction between that case and this on the facts. In that case as in this, there had been a telephone conversation followed by confirmatory letters but there had been no disagreement as to the terms of the sale as agreed upon over the phone. The letter written by the defendants in that case was in reply to letters asking whether the grain purchased could be shipped within the time provided, and in the reply the defendant clearly admitted the purchase and gave excuses for not having shipped it, and since there was no contention that the letter of confirmation did not follow the oral agreement, it could well be said that the letter of defendant referred to both the oral agreement and the confirmatory letters. In this case there was a dispute as to the terms of the oral agreement. The inquiries of plaintiff as to when shipment would be made were not answered at all and the letter which defendant did write on October 24th was in answer to one of the 23rd in relation to a draft. This letter of plaintiff of the 23rd was couched in such

language as to draw the attention of defendant away from the letters of confirmation, and not to them, and there is nothing in the letter of the 24th that can be construed to refer either expressly or impliedly to the confirmation letters of the plaintiff. On the question involved each case must stand upon its own facts and we do not regard the facts in this case as being the same as in the Barker Case nor do we think we are in conflict with that case.

We think the defendant's demurrer to the testimony should have been sustained, and since the letters on which plaintiff relies did not show a contract as required by the Statute of Frauds, the judgment should be reversed and it is so ordered. *Farrington, J.,* concurs; *Bradley, J.,* concurs in separate opinion.

BRADLEY, J. (concurring).—I concur in the opinion by my associate, but desire to make this further observation. There is no claim that defendant was bound by any act except the letter of October 24, 1917. In this letter defendant says: ''We have your letter addressed to the Farmers Grain & Implement Company of Iantha, Mo., and note you have made draft for $500. We do not expect to margin this contract, or any other contract that we make outside of buying options. You are buying corn from us and if we get the cars you will get the corn.'' This letter was written by S. S. Potter, president and treasurer of defendant. Potter worked in a bank, and defendant's mail came to its own office and place of business. The confirmation letters came to defendant's place of business. The draft for the $500 came to the bank where Potter worked, and without actual knowledge that the confirmation letters had been received at the defendant's office, Potter wrote the letter of October 24. Defendant, of course, knew the contents of the confirmation letter through other officers or agents in charge of its office and mail, and Potter's lack of actual knowledge is only important in construing his letter of October 24. In the letter Potter was speaking

about the contracts or understandings had in oral conversation over the phone, and according to Potter there was nothing said about margins, and defendant was not to be bound to ship unless it could get cars. The confirmation letters provided for a margin, and made no reference to consequence in the event cars could not be obtained. In the light of the circumstances surrounding Potter when he wrote the letter of October 24, defendant's counsel construes the letter thus: "We did not sell you any corn that we were to margin and we are not going to margin it. Our agreement was that we would ship you this corn if we could get cars, and if we can get cars we will ship you the corn, otherwise not."

I think this is a reasonable construction, and the only reasonable one in the light of the surrounding circumstances.